UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CAITLIN WEATHERS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:22-CV-04085 |
| | § | |
| HOUSTON METHODIST HOSPITAL | § | |
| AND SUNILA ALI, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Houston Methodist Hospital ("Houston Methodist") and Sunila Ali ("Ali") (collectively "Defendants") file this Motion for Summary Judgment under Federal Rule of Civil Procedure 56 and in support thereof would respectfully show:

**I.   SUMMARY OF ARGUMENT**

Defendant's Motion for Summary Judgment should be granted because—

- **Plaintiff's Title VII discrimination claims are time-barred because Plaintiff's Charge of Discrimination was not filed within 300 days of the acts about which Plaintiff complained (i.e., Plaintiff submitted her Charge of Discrimination *303 days* after her termination date), rendering it untimely;**

- **Title VII does not permit liability against employees in their individual capacity (i.e., Defendant Sunila Ali);**

- **Plaintiff's race and gender discrimination claims fail because Plaintiff has offered no evidence to support the fourth element of her prima facie case that Houston Methodist replaced Plaintiff with someone who was not Caucasian, was not a woman, or that other similarly situated persons were treated more favorably; and**

- 1 -

- **Plaintiff has no evidence to support her Title VII retaliation claim because Plaintiff cannot establish a causal connection between her alleged protected activity and any adverse employment decision.**

## II. NATURE AND STAGE OF PROCEEDING

Plaintiff filed this lawsuit against Defendants on November 16, 2022, alleging violations of Title VII based on race and sex discrimination and retaliation.[1] Defendants moved to dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b)(6) alleging that Plaintiff failed to exhaust her administrative remedies for such claims, and argued that Defendant Ali is not a proper party to this lawsuit.[2] On March 31, 2023, Plaintiff filed a "Motion to Strike," "refut[ing] [Defendants'] response."[3]

After Defendants' filed their Motion to Dismiss for failure to state a claim, Houston Methodist learned that Plaintiff submitted a Charge of Discrimination on August 3, 2022, 303 days *after* her termination on October 4, 2021.[4] Plaintiff filed a "Response" to Defendants' Motion to Dismiss on April 14, 2023, arguing that Defendant "Sunila [Ali] is a rightful party to the suit" and that "[s]he should be kept in the suit due to retaliation in the claim," and various other nebulous points.[5]

The Court conducted a status conference on May 1, 2023, wherein it granted Defendants' oral motion to withdraw its pending Motion to Dismiss and set a deadline for

---

[1] Dkt. 1.

[2] Dkt. 7.

[3] Dkt. 11 at 1.

[4] *See* Ex. A, Charge No. 460-22-02396, HMH 00412-00413.

[5] Dkt. 18.

Defendants to file this Motion for Summary Judgment.[6] Defendants now move for summary judgment as all of Plaintiff's claims fail as a matter of law.

### III. BACKGROUND

Plaintiff began her employment at Houston Methodist in May of 2019, as a Transporter on an as-needed ("PRN") basis.[7] Several months later, Plaintiff became a full-time employee at Houston Methodist.[8] In May 2021, Plaintiff began working as a Patient Care Assistant ("PCA") in Houston Methodist's Neurological Intensive Care Unit ("NICU") under the Supervision of Defendant Ali, the Director of Houston Methodist's NICU.[9] During her stint as a PCA from May 2021 through October 4, 2021 (Plaintiff's termination date), Plaintiff received performance-based counseling in the form of a "Disciplinary/Counseling Report" or "DCR",[10] was placed on a performance improvement plan,[11] and ultimately was terminated for failing to "comply with instructions provided by nurses, performing out of PCA scope of practice and contributing to a disruptive work environment."[12]

*A. Plaintiff's Disciplinary History at Houston Methodist*

Plaintiff's first discipline as a PCA by Houston Methodist became effective on August 23, 2021, wherein Plaintiff was cited for interfering in nursing duties normally performed by a

---

[6] Dkt. 29.

[7] Ex. B, New Hire Documentation Concerning C. Weathers, HMH 00414-00428.

[8] Ex. C, Full-time Offer Letter, dated September 3, 2019, HMH 00429.

[9] Ex. D, PCA Offer Letter to C. Weathers, dated May 3, 2021, HMH 00430-00431; Ex. H, Affidavit of Sunila Ali.

[10] Ex. F, Disciplinary/Counseling Report for C. Weathers, dated August 23, 2021, HMH 00433-00438.

[11] Ex. G, Performance Improvement Plan, HMH 00439-440.

[12] Ex. E, Documentation of Termination, dated October 4, 2021, HMH 00432.

registered nurse.[13] As a PCA, Plaintiff was not qualified to perform such duties.[14] For instance, on August 19, 2021, Plaintiff meddled with a patient's external ventricular drain (a device that monitors and regulates fluid in the brain, commonly abbreviated "EVD") without authorization from the registered nurse on duty.[15] On another occasion, Plaintiff interfered with a patient's BiPAP machine and administered ice chips to the same patient.[16] Plaintiff was admonished that "this was a serious safety issue since the patient had likely aspirated and that [Plaintiff's] actions could have resulted in patient harm."[17] Even still, on a third occasion, Plaintiff interfered once again with a patient's EVD which resulted in an unmonitored drain, causing an increased risk of patient harm as well as causing the patient to experience headaches.[18]

Plaintiff was promptly placed on a performance improvement plan ("PIP"). The parameters of Plaintiff's PIP mandated:

1. [Plaintiff] will provide safe patient care by complying with instruction provided by nurses and will not touch any patient monitors, drains, and devices that are not under her scope of practice. [Plaintiff] will notify bedside RN, Charge RN or Resource nurse if she needs help with patient that has monitor, devices, pumps and drains.

2. [Plaintiff] will respond to patient needs and changes in condition in a timely manner and will prioritize other patients' need[s] accordingly and appropriately at an ICU level.

3. [Plaintiff] will show [a] sense of urgency when providing care to critically ill patients[, and]

---

[13] Ex. F, Disciplinary/Counseling Report for C. Weathers, dated August 23, 2021, HMH 00433-438.

[14] Ex. F, HMH00434.

[15] Ex. F, HMH00433.

[16] Ex. F, HMH00433.

[17] Ex. F, HMH 00433-00435.

[18] *Id.*

    4.    [Plaintiff will support a positive and productive workplace environment[.][19]

In working through the PIP, Plaintiff was required to hold weekly follow-up meetings[20] with Defendant Ali for the duration of the PIP, which was to last thirty (30) days, beginning on September 1, 2021.[21]

On October 4, 2021, Houston Methodist terminated Plaintiff's employment for her failure "to meet PIP and DCR expectation[s] of [being] unable to comply with instructions provided by nurses, performing out of PCA scope of practice and contributing to a disruptive work environment."[22] The specific incident leading to Plaintiff's termination once again concerned Plaintiff's failure to comply with instructions provided by nurses and performing out of PCA scope of practice..[23] Plaintiff was terminated on October 4, 2021 as memorialized by Plaintiff's Documentation of Termination:[24]

---

[19] Ex. G, Performance Improvement Plan, HMH 00439-00440.

[20] Plaintiff had follow-up meetings with Defendant Ali on September 9, September 22, and September 30, 2021. On each occasion, Plaintiff's supervisor, Defendant Ali checked "No" on whether Plaintiff's performance was "at a satisfactory level. *See* Ex. G, p.2; *see also*

[21] Ex. G.

[22] Ex. E.

[23] *Id.*

[24] *Id.*

**DOCUMENTATION OF TERMINATION**

REVIEW AND APPROVAL OF ALL SUPPORTING DOCUMENTATION WITH HUMAN RESOURCES AND SECOND LEVEL MANAGEMENT IS REQUIRED PRIOR TO INITIATING ANY TERMINATION. *

| Employee Name: | Caitlin Weathers | Entity: | HMH-Main | Effective Date: | 10/4/2021 |
|---|---|---|---|---|---|
| Job Title: | PCA | Dept: | NICU | Employee ID: | 1061235 |

**Termination Reason (check one):** CONDUCT ☐   PERFORMANCE ☒

**Detailed description of events:**

DETAILS OF ISSUE(S): Violation of Policy HR01 - Managing for Performance – <u>Poor Performance</u> – failure to fulfill the employer's standards and expectations required to perform the essential functions of their job. In the event competence is a root cause for an adverse event, management will explore remediation through performance improvement plan coaching and/or education/training as determined appropriate.

**Most Recent Incident:**

On 9/30/2021, Ms. Caitlin Weathers had beds 29-37. She was rounding on her side to pick up trash and dirty linens and noticed patient in bed 31 Ms. BB had their SCDs off. Ms. Caitlin asked the nurse about them being off. The nurse explained that the patient is agitated/restless, and she is giving patient break from SCDs. This patient had been restless and agitated all day. In front of the patient's sister, Caitlin continued to talk about turning SCDs on. Nurse explained to Caitlin that the SCDs been on all day, even the husband requested to turn them off for short period of time. The nurse asked if they can step out of the room to continue this conversation. Even outside the room Caitlin kept insisting the nurse should turn the SCDs on. Even Charge Nurse explained that there was a reason the SCDs were off and it is best to always check with the nurse first. The charge nurse made the observation that Caitlin was unable to comprehend the explanation provided as she kept arguing that the SCDs should be on, instead of understanding patient's need and condition.

Ms. Caitlin failed to meet PIP and DCR expectation of unable to comply with instructions provided by nurses, performing out of PCA scope of practice and contributing to a disruptive work environment.

Pursuant to Policy HR01 - Managing for Performance, Caitlin Weather employment with Houston Methodist is being terminated effective immediately.

**HISTORY:**
- PIP – 8/23/2021
- DCR – 8/23/2021

Employee Signature: *Ms. Caitlin refused to sign this document.*   Date: 10/4/2021

*NOTE: Employee signature does not indicate agreement with this report, only acknowledgement of receipt.*

Human Resources Signature: *Mariana Mondragon*   Date: 10/4/2021

Supervisor's Signature: *[signature]*   Date: 10/4/2021

Second Level Signature:   Date:

Caitlin Weathers_1061235_Term Performance_10-01-21                     Human Resources – Original

## B.   *Plaintiff's Lawsuit*

Plaintiff filed this lawsuit on November 16, 2022.[25] In her Complaint, Plaintiff asserts that she was discriminated against based on her race, color and sex, and was retaliated against in violation of Title VII.[26]

---

[25] Dkt. 1.

[26] Dkt. 1 at 3.

As for her rendition of the facts, Plaintiff alleges:

> I believe Sunila Ali the hiring manager for H[ouston Methodist]'s neuro ICU unit retaliated against me after filing reports of harassment/discrimination. I was hired on May 28, 2019 as a transporter at Houston Methodist Hospital and transferred to the new job role the day after Memorial Day (2021). I made multiple attempts/complaints which only escalated movements against me.
>
> Claims:
>
> > [R]ace – only Caucasian in job role for this employer (Sharon Agawye)
> > Sex – Harassed by single male (Cameron Shonk)
> > Retaliation – see above (Sunila Ali).[27]

Prior to Plaintiff's filing of this lawsuit, Plaintiff filed a Charge of Discrimination with the EEOC on August 3, 2022, 303 days after her termination from Houston Methodist on October 4, 2021.[28] For the reasons explained below, as Plaintiff has not—and cannot—raise any genuine issue of material fact as to her Title VII discrimination and retaliation claims against Defendants, summary judgment is appropriate and should be accordingly granted.

### IV. ARGUMENT & AUTHORITIES

#### A. LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute regarding any material fact and the movant is entitled to judgment as a matter of law.[29] A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.[30] When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most

---

[27] Dkt. 1 at 8.

[28] *See* Ex. A.

[29] Fed. R. Civ. P. 56(a).

[30] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party.[31] Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.[32] Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment.[33] Nor may unsubstantiated assertions, improbable inferences, and unsupported speculation serve as competent summary judgment evidence.[34] Finally—and perhaps most importantly—Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.[35]

**B.      Summary Judgment Should Be Granted Because Plaintiff's Charge of Discrimination Underlying This Claim Was Untimely Filed**

Title VII provides that a charge of discrimination shall be filed with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred."[36] "To sustain a Title VII claim in Texas, a plaintiff must file her charge of discrimination with the EEOC *within 300 days* of the "alleged unlawful employment practice."[37] While a plaintiff may not sustain her claims based on incidents occurring before the 300-day filing period, such prior acts "however, 'may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate

---

[31] *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).

[32] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

[33] *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

[34] *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert denied,* 513 U.S. 871 (1994).

[35] *Ragas v. Tennessee Gas Pipeline Co*, 136 F.3d 455, 458 (5th Cir. 1998).

[36] 42 U.S.C. § 2000e-5(e)(1).

[37] *Snooks v. Univ. of Houston, Clear Lake*, 996 F. Supp. 686, 688 (S.D. Tex. 1998) (emphasis added).

event in history which has no present legal consequences."[38] Although Title VII's filing deadline is not a jurisdictional requirement, the Supreme Court has held that these charge of discrimination filing requirements are similar to a statute of limitations and thus are subject to the doctrines of waiver, estoppel, and equitable tolling.[39]

Here, Plaintiff's Complaint is based on the Charge of Discrimination that Plaintiff filed with the EEOC on August 3, 2022.[40] In that Charge of Discrimination, Plaintiff stated in pertinent part that:

> On or about October 4, 2021, I was discharged from my position as Patient Care Associate. I believe my termination is discriminatory based on my race (white) and sex (female). The alleged reason for my termination is performance, which I believe to be pretext to discrimination because my performance first came into question shortly after complaining of harassment. From April 1, 2021, until my termination, I was harassed by Cameron Shonk, Sharon (last name unknown), Cassie Hall, and Amanda Roning. I reported the harassment to management officials Donte Macasaet, Sunila Ali, and Marianna Mondragon during all of August 2021, but I was ignored, and the harassment continued. Here are a few examples of the harassment I had been subjected to: I was called "white trash" by Cameron Shonk, I was called "psychotic" and "gay" by Sharon, and I was subjected to daily bullying from Cassie Hall and Amanda Roning. On or about August 23, 2021, I finally met with Sunila Ali and Mariana Mondragon about the issue for the first time. During this meeting, instead of my complaint being listened to, my "fit" within the company was questioned. Shortly after this meeting, I suffered tangible harm when I was terminated. I believe that I was retaliated against for complaining about harassment and discriminated against because of my color, race (white), and sex (female) in violation of Title VII of the Civil Rights Act of 1964, as amended.[41]

The timeline here is important. Plaintiff submitted her Charge of Discrimination to the EEOC on August 3, 2022.[42] The statements contained in Plaintiff's Charge of Discrimination indicate that any act by Houston Methodist occurred on or before October 4, 2021, the date

---

[38] *Id.* (quoting *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977)).

[39] *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).

[40] *See* Ex. A.

[41] *Id.*

[42] *Id.*

on which Houston Methodist terminated Plaintiff's employment. Since Plaintiff did not file her Charge of Discrimination upon which her claims are based until August 3, 2022, *i.e.*, 303 days *after* Houston Methodist discharged her, the Charge of Discrimination that Plaintiff filed with the EEOC on August 3, 2022 was not timely filed within the 300 days of the acts about which she complained.

Courts in this Circuit have consistently held that summary judgment is appropriate for claims premised on underlying Charges of Discrimination filed more that 300 days after a Plaintiff's termination as time-barred.[43] Plaintiff carries the burden to file her Charge of Discrimination *no more than 300 days* after the allegedly discriminatory and retaliatory practices of Houston Methodist occurred to preserve her right to seek relief under Title VII.[44] Plaintiff did not carry her burden. Therefore, summary judgment should be granted in favor of Defendants.

**C.     Summary Judgment Should Be Granted Because Title VII Does Not Impose Liability Against Employees In Their Individual Capacity**

Title VII prohibits *employers* from discriminating against an individual on the basis of "race, color, religion, sex, or national origin."[45] "The term 'employer' means a person engaged

---

[43] *See Spiller v. Ella Smithers Geriatric Center*, 919 F.2d 339, 343 (5th Cir. 1990) (affirming grant of summary judgment where plaintiff filed charge 450 days after alleged discriminatory act occurred); *see also Ruffin v. American Airlines, Inc.*, No. 3:98-cv-1163-G, 1999 WL 447064, at *3 (N.D. Tex. June 30, 1999) (granting summary judgment on discrimination claims because charges of discrimination were not timely filed); *see also Allen v. American Airlines, Inc.*, No. CIV.A. 3:98-cv-2990G, 2000 WL 4257, at *2 (Jan. 3, 2000) (granting summary judgment where Plaintiff filed charge over 14 months after allegedly discriminatory acts occurred).

[44] *Mohasco Corp. v. Silver*, 447 U.S. 807, 814 n.16 (1980) ("If a complainant files . . . not more than 300 days after the practice complained of[], his right to seek relief under Title VII will. . . be preserved.").

[45] 42 U.S.C. § 2000e-2(a).

in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year."[46]

The Fifth Circuit has consistently interpreted the scope of Title VII to prohibit liability against employees in their individual capacity for alleged acts of discrimination and retaliation.[47] Importantly, the Fifth Circuit has opined that **"[T]itle VII does not permit the imposition of liability upon individuals unless they meet [T]itle VII's definition of 'employer.'"**[48]

Here, Plaintiff as not alleged any facts in her Complaint nor has elicited any evidence to support the conclusion that Defendant Ali was her employer. Accordingly, Plaintiff may not recover against Defendant Ali. Defendant Ali is not a proper party under Title VII and must be dismissed from this lawsuit. As a result, summary judgment should be granted in favor of Defendant Ali.

### D. Summary Judgment Should be Granted Because Plaintiff Has Failed To Establish A Claim of Discrimination Under the *McDonnell Douglas Burden-Shifting* Framework

The Supreme Court has established a careful shifting of burdens for cases under Title VII.[49] Under this "well-trod path,"[50] a plaintiff must first establish a prima facie case of

---

[46] 42 U.S.C. § 2000e.

[47] *Smith v. Amedisys Inc.*, 298 F.3d 434, 448 (5th Cir. 2002) ("This circuit has held that there is no individual liability for employees under Title VII."); *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir. 1994) ("Based upon analogous caselaw and the structure of Title VII, we conclude that individuals who do not otherwise qualify as an employer cannot be held liable for a breach of Title VII."); *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999) ("A party may not maintain a suit against both an employer and its agent under Title VII.").

[48] *Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir. 1994); *see also Brewer v. Lavoi Corp.*, No. 3:13-cv-4918-N, 2014 WL 4753186, at *3 (N.D. Tex. Sept. 24, 2014) ("Title VII provides for liability only as to an employer, as defined in [Title VII], not an individual supervisor or fellow employee.")

[49] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

[50] *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003) *overruled on other grounds by Smith v. Xerox Corp.*, 602 F.3d 320 (5th Cir. 2010).

discrimination by a preponderance of the evidence.[51] If the plaintiff succeeds in making this prima facie showing, the plaintiff, "creates a rebuttable presumption that the employer unlawfully discriminated against the employee."[52]

At this time, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.[53] This is a burden of production only, and involves no credibility assessments.[54] The employer must "clearly set forth, through the introduction of admissible evidence, reasons for its actions which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action."[55]

"[O]nce the employer articulates such a reason, the presumption of unlawful discrimination disappears and the burden shifts back upon the plaintiff to establish by a preponderance of the evidence that the articulated reasons was merely a pretext for unlawful discrimination."[56] "The defendant's 'production' (whatever its persuasive effect) having been made, the trier of fact proceeds to decide the ultimate question: whether plaintiff has proven 'that the defendant intentionally discriminated against [him]' because of his [protected trait]."[57]

---

[51] *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).

[52] *Id.*

[53] *Id.*

[54] *Id.* at 509.

[55] *Id.* at 507 (quotation omitted).

[56] *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 282 (5th Cir. 2000).

[57] *Hicks*, 509 U.S. at 511. (citation omitted).

In all employment discrimination cases, the "inquiry is whether the defendant intentionally discriminated against the plaintiff." [58] "Whether summary judgment is appropriate depends on numerous factors, including the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered."[59]

  A.  *Plaintiff's Title VII Discrimination Claims Fail As A Matter of Law*

Title VII makes it an "unlawful employment practice" to discriminate against an individual "because of" such individual's race, color, religion, sex, or national origin.[60] Plaintiff may establish a prima facie case by showing that she "(1) is a member of a protected class; (2) was qualified for her position; (3) was subjected to an adverse employment action; and (4) was replaced by someone outside the protected class, or that other similarly situated persons were treated more favorably."[61]

Here, Plaintiff has no evidence of the fourth element of her Title VII prima facie case that she "was replaced by someone outside the protected class, or that other similarly situated persons were treated more favorably." Rather, Plaintiff merely alleges for her race discrimination claim that she was "the only Caucasian in [her] job role for this employer" and for her sex discrimination claim that she was "harassed by [a] single male (Cameron Shonk)."[62] Plaintiff has not proffered any evidence of a comparator outside of her protected class who

---

[58] *Roberson v. Alltel Info Servs.*, 373 F.3d 647, 651 (5th Cir. 2004) (quotations omitted).

[59] *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (quotation omitted).

[60] 42 U.S.C. § 2000e-2.

[61] *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005).

[62] Dkt. 1 at 8.

was treated more favorably or that she was replaced by someone who was not Caucasian or not female for purposes of her race and gender discrimination claims, respectively. More importantly, Plaintiff has utterly failed to offer any evidence that any sort of causal connection existed between Plaintiff's race or gender and her termination on October 4, 2021. Plaintiff's allegations of discrimination are based on nothing more than mere speculation and her own subjective belief, which are insufficient to support her Title VII claims.[63] Therefore, summary judgment should be granted in favor of Defendants.

### B. *Plaintiff's Title VII Retaliation Claim Fails As A Matter of Law*

"Title VII makes it an 'unlawful employment practice for an employer to discriminate against any of his employees. . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter. . .'"[64] The Fifth Circuit has established "three elements that a plaintiff must prove in h[er] retaliation claim: (1) the employee has engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action."[65]

As with her Title VII discrimination claims, Plaintiff has failed to plead or allege that any sort of causal connection existed between Plaintiff's opposition to a discriminatory practice (her "filing of reports of harassment/discrimination") and her termination. Assuming *arguendo* that Plaintiff could demonstrate that she engaged in a protected activity and suffered

---

[63] *Elliott v. Group Med. & Surgical Services*, 714 F.2d 556, 567 (5th Cir. 1983) ("We are not prepared to hold that a subjective belief of discrimination, however genuine, can be the basis of judicial relief.").

[64] *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 878 (5th Cir. 1999) (quoting 42 U.S.C. § 42 U.S.C. § 2000e-3(a)).

[65] *Id.* (citing *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 705 (5th Cir. 1997)).

an adverse action, Plaintiff has simply not provided any evidence that Houston Methodist or Defendant Ali retaliated her *because of* her report filings. As with Plaintiff's discrimination claims, Plaintiff's allegations of retaliation are based on nothing more than mere speculation and her own subjective belief, which are insufficient to support her Title VII claims.[66] As a result, summary judgment should be granted in favor of Defendants.

### E. CONCLUSION

For these reasons, Defendants Houston Methodist Hospital and Sunila Ali respectfully request that the Court grant its Motion for Summary Judgment and for all other relief that the Court deems appropriate.

Respectfully submitted,

By: */s/ Daniel Patton*

Daniel Patton
Federal Bar No. 26200
Texas Bar No. 24013302
dpatton@scottpattonlaw.com

ATTORNEY IN CHARGE FOR DEFENDANTS

OF COUNSEL:

Patrick M. Palmer II
Federal Bar No. 3542529
Texas Bar No. 24116871
palmer@scottpattonlaw.com
**SCOTT PATTON PC**
5301 Katy Freeway, Suite 201
Houston, Texas 77007
Phone:    (281) 377-3311
Fax:       (281) 377-3267

---

[66] *Elliott v. Group Med. & Surgical Services*, 714 F.2d 556, 567 (5th Cir. 1983) ("We are not prepared to hold that a subjective belief of discrimination, however genuine, can be the basis of judicial relief.").

## CERTIFICATE OF SERVICE

I certify that on May 22, 2023, a true and correct copy of *Defendants' Motion for Summary Judgment* was served on all parties of record via email and in accordance with the Federal Rules of Civil Procedure.

Caitlin Weathers
2425 Capitol Street, #2143
Houston, Texas 77003
*Plaintiff Pro Se*

                                            */s/ Daniel Patton*
                                            Daniel Patton