United States Courts
Southern District of Texas
F I L E D

**IN THE UNITED STATES DISTRICT COURT FOR THE**     JUN 2 1 2023
**SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION**

Nathan Ochsner, **Clerk of Court**

**Caitlin Weathers**                                              **Plaintiff**


v.                                                    **Case Number: 4:22-CV-04085**


**Houston Methodist Hosptial,**
**and Sunila Ali**                                                **Defendants**


## OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION


On 5/1/2023 parties met during an initial status conference where an oral motion to

convert the defendants' motion to dismiss into a motion for summary judgment was requested.

There are no other past or present cases pending in any other state or federal court related to this

one. This case is about discrimination based on my color, race, sex and retaliation in violation of

my civil rights that are guaranteed and protected as part of the 14th Amendment of the U.S.

Constitution and the Civil Rights Act of 1964. The court should deny the defendant summary

judgment because their request is inappropriate since I did make a timely filing. I filed my

charge on 02/11/2022. It cannot be disputed that, following procedures, I signed the Charge of

Discrimination on 08/03/2022 as was issued by the Texas Workforce Commission's Civil Rights

Division **within the statute of limitations** and lends defendants no basis for dismissal; defendants' failure to perceive this is criminal negligence. *Labor Code: Subchapter A. Sec. 21.256.* Defendants have not denied the claims in a responsive pleading which provides proof of indirect evidence to infer support of Plaintiff's claims and opposition. No material facts can be reasonably disputed without defendants' answer with denial of claims. A denial must fairly respond to the substance of the allegations. The Charge of Discrimination is sufficient. Interventions anticipated to commence in this matter include the need for a definite answer, statement, grounds, explanation, and further discovery from defendants. To date, no possibility of a prompt settlement or resolution has been discussed and pending motions for default judgement and sanctions can still be ruled against the defendants. (Exhibit A, B)

## **ARGUMENT: Part 1**

The Texas Workforce Commission and the U.S. Equal Employment Opportunity Center work together in workshare agreements and as such have the right to defer. For complaints that are filed with the EEOC and deferred to the CRD, timeliness of the complaint may be determined by the date on which the complaint is received by EEOC. *40 Tex. Admin. Code. Subchapter E 819.71, 819.76.* It is in such that 8/11/2022 marks 181 days from the time I filed my charge. Both the Charge of Discrimination and the Notice of Right to Sue Letter were signed by this calendar date. My complaint was dually filed by both the respective agency and the commission:

i. Texas Workforce Commission CRD: Statute of limitations is two years and can go directly to court without first filing an EEOC charge.

ii. Equal Employment Opportunity Commission (EEOC): The federal agency with authority, competency, and expert knowledge on matters of discrimination and retaliation claims. The EEOC charge filing procedures allow for exceptions to statutory limits and when they may be extended, for example:

I) Equitable Tolling includes extensions for reasonable periods of time where misleading information or mishandling of the charge has occurred. On 11/09/2022, I filed my application to pursue civil action with the U.S. Federal District Court in the Southern District of Texas – Houston Division, exactly 90 days after the Equal Employment Opportunity Center issued the Notice of Right to Sue Letter. According to Federal EEO Complaint Processing Procedures, "The regulations provide civil actions may be filed in an appropriate federal court within 90 days of receipt of the final action where no administrative appeal has been filed." No appeal was made after I filed my charge with the EEOC on 02/11/2022. Thereafter, I attempted everyday possibly conceivable to schedule an interview, making due diligence, and when I logged in to use their virtual proprietary calendar, they consistently marked out every-single-date as unavailable. I believe this was largely due to COVID-19 related issues as it was not permitted at the time for claimants to physically be on the premises, and difficult if ever to reach anyone over the phone (they did not schedule interviews over the phone- by appointment only). Subsequently, when I was able to eventually schedule an interview online, I ultimately had to schedule and reschedule again due to unexpected cancellations. The EEOC issued

receipt of the Notice of Right to Sue Letter on 08/11/2022 allowing civil action to be
brought forward. 1, 2 (Exhibit C, D, E)


II) In addition, further evidence under thresholds of Equitable Estoppel can be found in the
Charge of Discrimination which state, by expert opinion, that defendant's actions are
pretextual (attempt to conceal discrimination) where reliance is on the defendant's
misconduct and misrepresentations. This reasoning wasn't clear to me until having
received initial disclosures from the defendants on 05/22/2023. I had made a request to
HMH's HR Representative Nancy Cerna to obtain a copy of my file on 09/09/2021 but
had been prevented from exerting any material facts therein due to defendants' failure to
act and respond to my request. Within the defendant's initial disclosures, evidence to
improper purpose of termination and willful or perceived knowledge of their deception
was found in the reports and correspondence. This was found in Mariana Mondragon's
notes wherein she wrote that a handbook does not exist for the unit where I was
employed under Sunila Ali who had control of the hiring and firing. Failure to provide
this information is fraud as it's a contradiction to what is written in HMH's job
description for the same unit and role that I applied for as a PCA. Consequently, any
claims that allege that I was terminated for cause for failing to follow guidelines is
pretextual because defendants didn't have any specified guidelines as referred to in the
job description for me to follow. Failure to perceive this is a gross deviation from
required standards of conduct. (Exhibit F, G, H)

Supplementing these facts, it is also found by the EEOC that discriminatory acts that are part of a "pattern-or-practice" of discrimination can be challenged as a single claim. If the discriminatory pattern or practice continues into the filing period, all the component acts of the pattern or practice will be timely, and relief can be recovered for any of those acts. This applies to: willful neglect to adopt more favorable policies and practices, evidence involving acts of intimidation to others received on 09/22/2022, and injuries discovered on 04/11/2022. 3 (Exhibit I, J, K)

Moreover, this topic was discussed during the status conference and the defendants waived their right to dismiss when they made an oral request to convert their motion into a motion for summary judgment. 4 (Exhibit L)

Theories: Part 1

1. Angel Granger; Casey Dixon Descant v. Aaron's Incorp. No. 10-30789 (5th Cir. 12/10/2010) The district court reasonably concluded that limitations should be equitably tolled on their complaints under the specific facts and circumstances in the case.

2. Alvarado v. Mine Service, Ltd., No. 14-50668 (5th Cir. 7/30/2015) Victim came very close to losing his day in court because of the EEOC's mishandling of the claim.

3. U.S. Courts Martha Agnew v Kansas Achievement Services Plaintiff's EEOC charge is entitled to a liberal construction as it pertains to whether administrative remedies have been exhausted.

4. United States of America v. State of Mississippi No. 3:16-CV-622-CWR-FKB

   (5/13/2019) Summary Judgment denied.

## ARGUMENT: Part 2

Sunila Ali is a rightful party to the suit as a matter of law due to unlawful aiding and abetting harassment. Sunila was the Director of the Neuro ICU who hired me on 04/01/2021 in the interest of Houston Methodist Hospital. I suffered significant adverse harm after I filed reports concerning discriminatory acts to my supervisor Sunila on 08/01/2021, 08/17/2021, and 09/30/2021; she was aware of other employees harassing actions, dismissed my complaints, failed to take action to stop the harassment, and punished me with disciplinary action on 09/01/2021 in the form of a Performance Improvement Plan. Sunila holds responsibility for the discriminatory acts of others which created a hostile work environment resulting in adverse actions and tangible harm. Sunila's negligent supervision fostered conspiracies which allowed for and promoted discriminatory behavior of one employee towards another in violation of *18 U.S. Code 1349.* She ignored my reports of threats and violence and illegally offered reward to other employees for their indiscrete harassing behavior by making a commitment to terminate my employment, indiscreetly. This is in violation of *Title 18 U.S.C. 241, 242, 245, and 249.* Sunila was not in absence of a retaliatory motive.  According to the hospital's criteria for misconduct, performing tasks delegated by healthcare professionals, opposing illegal activity, and filing complaints of harassment, does not constitute grounds for a supervisor to terminate employment. Houston Methodist's examples of misconduct are:

"Insubordination; Verbal or physical abuse; Willful neglect, Dishonesty; Falsification of any HM record; Theft; Fighting, provoking, or instigating a fight; Bringing or being in the possession of a weapon or other dangerous device on HM property without authorization; Possession or use of illegal drugs during scheduled work hours; Breach of Confidentiality and Information Security Agreement; Recent conviction of a criminal offense related to healthcare or specific job duties; Exclusion/ debarment from participating in federal health care programs"

Because I opposed illegal practices and filed complaints of harassment, I was illegally discriminated against in terms of conditions and privileges where some but not all individuals could perform delegated tasks (without any verifiable reason), excluded from training programs, discharged from employment and replaced with an African American individual, by Sunila Ali. I never signed the termination papers that were given to me and do not contend to any affirmative defense where defendant may assert any accord and satisfaction. Sunila had duty and she breached that duty. It is civil fraud to make the claim that she refers to Houston Methodist's job description as the basis for her determinations as she was unable to provide the required measurement tool before initiating disciplinary action to document unit specific requirements, as would be found in a handbook. (Exhibit M, N, O, P)

Theories: Part 2

1. EEOC v. Jack in the Box, No. 3:08-cv-009663 (M.D. Tenn. Settled May 19, 2009): "Racial harassment directed at white employee by black employees is just as illegal under federal law as the other way around."
2. EEOC v. Area Temps, Inc., No. 1:07-cv-2964 (N.D. Ohio July 21, 2010): Case settled for $650,000.00 in monetary relief for assigning employees job roles based on their race.
3. EEOC v. Dots, LLC, No 2:10-cv-00318-JVB-APR (N.D. Ind. June 3, 2011): Excluding white people from employment based on race.
4. Gross v. FBL Financial Services, Inc., 557 U.S. 167 (2009): Preponderance of evidence and causation standards. Only that the adverse action would not have occurred in the absence of a retaliatory motive. EEOC's notice of right to sue/ charge of determination letter is not required as sole causation.

**CONCLUSION**

For the reasons stated above the court should deny summary judgement in favor of the defendant then granted in favor of plaintiff to allow opportunity for equitable relief. Monetary relief sought over $250,000.00 but not more than $1,000,000.00; and non-monetary relief. The damages sought are within the jurisdictional limits of the court.

Scott Patton

5301 Katy Freeway, suite 201

Attorney for Sunila Ali and Houston Methodist Hospital

By: Fax

Caitlin Weathers

06/21/2023

NOTES: Pursuant to Texas Rule of Appellate Procedure 6.3, a party's lead
counsel must be served. Service on other attorneys for that party is optional,
but must be listed above if they are served. Pursuant to Texas Rule of
Appellate Procedure 52.7(c), the record must be served on each party in an
original proceeding, including a respondent trial judge.

COUNTY OF Harris

BEFORE ME, the undersigned authority, on this day personally appeared

*Caitlin Weathers* _____, who

swore or affirmed to tell truth, and stated as follows:

"My name is Caitlin Weathers, my date of birth is 02/18/1989, and my address is 2425 Capitol

ST #2143, Houston, TX 77003. I declare under penalty of perjury that the foregoing is true and

correct. Executed in Harris County, State of Texas, on the 21 DAY of JUNE 2023."

State of Texas

County of Harris

SWORN to and SUBSCRIBED before me, the undersigned authority, on

the _21_ day of _June_ _____,

_2023_ year, _Caitlin Weathers_

by _____

Notary Public, State of Texas [Notary's signature.]

JASMINE GONZALEZ
Notary Public, State of Texas
Comm. Expires 03-01-2025
Notary ID 130947831

**Certificate of Service**

As required by Texas Rule of Appellate Procedure 6.3 and 9.5(b), (d),

(e), I certify that I have served this document on all other parties—which are

listed below—on 06/21/2023 as follows:

# UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION

**Caitlin Weathers**

**v.**                                                        **Case Number: 4:22-CV-04085**

**Houston Methodist Hosptial**

## EXHIBIT LIST

A. Date charge was filed with the EEOC

B. Charge of Discrimination

C. Notice of Right to Sue Letter

D. Date that application was submitted to the court

E. Records with EEOC

F. Date request for employee file was made

G. Mariana Mondragon's notes from HR meetings

H. Job description

I. Evidence that others experienced discrimination in the form of intimidation

J. Summary of Recollections (Affidavit)

K. Date of observed injury

L. Transcript

M. Confirmation of employment with Sunila Ali

N. Dates of reports to Sunila

O. Unsigned termination letter

THE STATE OF TEXAS

COUNTY OF Harris

BEFORE ME, the undersigned authority, on this day personally appeared

_____ *Caitlin Weathers* _____, who

swore or affirmed to tell truth, and stated as follows:

"My name is Caitlin Weathers, my date of birth is 02/18/1989, and my address is 2425 Capitol

ST #2143, Houston, TX 77003. I declare under penalty of perjury that the foregoing is true and

correct. Executed in Harris County, State of Texas, on the 21 DAY of JUNE 2023."

State of Texas

County of Harris

SWORN to and SUBSCRIBED before me, the undersigned authority, on

the _21_ day of _June_ ,

_2023_ year, *Caitlin Weathers*
by _____

Notary Public, State of Texas [Notary's signature]

JASMINE GONZALEZ
Notary Public, State of Texas
Comm. Expires 03-01-2025
Notary ID 130947831

**Certificate of Service**

As required by Texas Rule of Appellate Procedure 6.3 and 9.5(b), (d),

(e), I certify that I have served this document on all other parties—which are

listed below—on 06/21/2023 as follows:

Scott Patton

5301 Katy Freeway, suite 201

Attorney for Sunila Ali and Houston Methodist Hospital

By: Fax

Caitlin Weathers

06/21/2023

NOTES: Pursuant to Texas Rule of Appellate Procedure 6.3, a party's lead counsel must be served. Service on other attorneys for that party is optional, but must be listed above if they are served. Pursuant to Texas Rule of Appellate Procedure 52.7(c), the record must be served on each party in an original proceeding, including a respondent trial judge.

# EXHIBIT

# A



7:34

Welcome, Caitlin | Log Out

| Case Number | Submission Date | Type | Status |
|---|---|---|---|
| 460-2022-02396 | 02-11-2022 | CHARGE | Charge Closed |

»  ◀          1          ▶ ▶|

**Please click on a case number to continue**

Technical Support    Accessibility Statement    Privacy Statement

AA    🔒 publicportal.eeoc.gov    ↻

# EXHIBIT

# B

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | | EEOC | 460-2022-02396 |
| | | FEPA | |

| **Texas Workforce Commission Civil Rights Division** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| Caitlin Weathers | 832-314-6357 | |

| Street Address |
|---|
| 2425 CAPITOL ST APT 2143 |
| HOUSTON, TX 77003 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| HOUSTON METHODIST HOSPITAL DIS | 501+ Employees | |

| Street Address |
|---|
| 6565 FANNIN ST |
| HOUSTON, TX 77030 |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|---|
| | Earliest | Latest |
| Color, Race, Retaliation, Sex | 04/01/2021 | 10/04/2021 |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

On or about October 4, 2021, I was discharged from my position as Patient Care Associate.I believe my termination is discriminatory based on my race (white) and sex (female). The alleged reason for my termination is performance, which I believe to be pretext to discrimination because my performance first came into question shortly after complaining of harassment.From April 1, 2021, until my termination, I was harassed by Cameron Shonk, Sharon (last name unknown), Cassie Hall, and Amanda Roning.I reported the harassment to management officials Dante Macasaet, Sunila Ali, and Mariana Mondragon during all of August 2021, but I was ignored, and the harassment continued. Here are a few examples of the harassment I had been subjected to: I was called "white trash" by Cameron Shonk, I was called "psychotic" and "gay" by Sharon, and I was subjected to daily bullying from Cassie Hall and Amanda Roning.On or about August 23, 2021, I finally met with Sunila Ali and Mariana Mondragon about the issue for the first time. During this meeting, instead of my complaint being listened to, my "fit" within the company was questioned. Shortly after this meeting, I suffered a tangible harm when I was terminated.I believe that I was retaliated against for complaining about harassment and discriminated against because of my color, race (white), and sex (female) in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally Signed By: Caitlin Weathers**<br><br>08/03/2022 | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED   AND   SWORN   TO   BEFORE   ME   THIS   DATE<br>*(month, day, year)* |
| *Charging Party Signature* | |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# EXHIBIT

# C

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Houston District Office**
1919 Smith Street, 6th Floor
Houston, TX 77002
(346) 327-7700
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 08/11/2022

**To:** Caitlin Weathers
2425 CAPITOL ST APT 2143
HOUSTON, TX 77003
Charge No: 460-2022-02396

EEOC Representative and email:    Rafael Rivera
Investigator Support Assistant
rafael.rivera@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 460-2022-02396.

On behalf of the Commission,

Gabriel Cervantes
Digitally signed by Gabriel Cervantes
Date: 2022.08.11 14:46:03 -05'00'

for    Rayford O. Irvin
District Director

**Cc:**
Carole Hackett
6565 FANNIN ST
HOUSTON, TX 77030

Please retain this notice for your records.

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 460-2022-02396 to the District Director at Rayford O. Irvin, 1919 Smith Street 6th Floor

Houston, TX 77002.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

# EXHIBIT

# D

# U.S. District Court
# SOUTHERN DISTRICT OF TEXAS (Houston)
# CIVIL DOCKET FOR CASE #: 4:22-mc-01978
# Internal Use Only

Weathers v. Houston Methodist
Assigned to: Judge Charles Eskridge

Date Filed: 11/09/2022

**Plaintiff**

**Caitlin Weathers**

represented by **Caitlin Weathers**
2425 Capitol St. #2143
Houston, TX 77003
832-314-6357
PRO SE

V.

**Defendant**

**Houston Methodist**

| Date Filed | # | Docket Text |
|---|---|---|
| 11/09/2022 | 1 | APPLICATION to Proceed In Forma Pauperis filed by Caitlin Weathers.(jdav, 4) (Entered: 11/09/2022) |

# EXHIBIT

# E

 **Gmail**

Caitlin Weathers <j.weathersca@gmail.com>

## 460-2022-02396: Caitlin Weathers vs. Houston Methodist Hospital
17 messages

**RAFAEL RIVERA** <RAFAEL.RIVERA@eeoc.gov>
To: "J.weathersca@gmail.com" <J.weathersca@gmail.com>

Mon, Aug 1, 2022 at 3:44 PM

Good afternoon,

Can you please provide a detailed timeline of events that led up to termination?

Thank you,

Rafael Rivera

Investigator Support Assistant

Phone: (346) 327-7719   Fax: (713) 651-4902

---

**Caitlin Weathers** <j.weathersca@gmail.com>
To: RAFAEL RIVERA <RAFAEL.RIVERA@eeoc.gov>

Mon, Aug 1, 2022 at 5:44 PM

(Rough draft) Timeline:

Started employment at HMH: 5/28/2019

1. 4/1/2021; Transferred to new department within capacity of PCA on WT 11 Neuro ICU

2. 6/7/2021; Completed PCA Elite Training and was signed off on skills by Rosario Alvarado

3. 7/17/2021 – 8/11/2021; Sunila Ali my hiring manager left for vacation

4. 7/25/2021 and 8/2/2021; Emailed Dante Macasaet the on-duty manager about workplace bullying with no response

5. 8/1/2021; Texted Sunila Ali about harassment with no response

6. 8/15/2021; Emailed Mariana Mondragon in HR about concerns

7. 8/17/2021; Texted Sunila Ali about harassment with response

8. 8/23/2021; Met with Sunila Ali and Mariana Mondragon about the issue for the first time

During my meeting with Sunila and Mariana, Sunila initiated the discussion with

me by first presenting an opportunity for me to resign by asking:

1. "Are you sure you want to work here?"
2. "Do you really think this is a good fit for you?"
3. "Don't be surprised if the other employees don't want to work with you anymore"
4. "You're not a team player"
5. She also revealed that she knew (with certainty) that Cameron Shonk had feelings for me (something that was said to me before by Kim Randle)

[Quoted text hidden]

--
CW

---

**Caitlin Weathers** <j.weathersca@gmail.com>                                  Mon, Aug 1, 2022 at 7:26 PM
To: RAFAEL RIVERA <RAFAEL.RIVERA@eeoc.gov>

Does this offer enough information to get started?
[Quoted text hidden]

--
CW

---

**RAFAEL RIVERA** <RAFAEL.RIVERA@eeoc.gov>                                      Tue, Aug 2, 2022 at 9:03 AM
To: Caitlin Weathers <j.weathersca@gmail.com>

Thank you,

I will be sending your charge shortly to collect signature. Before your termination, had you been placed on a performance improvement plan or had anyone in leadership coached you about your job performance?

**From:** Caitlin Weathers <j.weathersca@gmail.com>
**Sent:** Monday, August 1, 2022 5:44 PM
**To:** RAFAEL RIVERA <RAFAEL.RIVERA@EEOC.GOV>
**Subject:** Re: 460-2022-02396: Caitlin Weathers vs. Houston Methodist Hospital

**CAUTION:** The sender of this message is external to the EEOC network. Please use care when clicking on links and responding with sensitive information. Forward suspicious emails to phishing@eeoc.gov.

[Quoted text hidden]

---

**RAFAEL RIVERA** <RAFAEL.RIVERA@eeoc.gov>                                      Tue, Aug 2, 2022 at 9:22 AM
To: Caitlin Weathers <j.weathersca@gmail.com>

Good morning,

To view your charge documents, please log into your public portal account. Once logged in, the website will ask you if you want to make changes to your document. If you select "no," it will take you to the electronic signature page.

Thank you,

**From:** Caitlin Weathers <j.weathersca@gmail.com>
**Sent:** Monday, August 1, 2022 7:27 PM
**To:** RAFAEL RIVERA <RAFAEL.RIVERA@EEOC.GOV>
**Subject:** Re: 460-2022-02396: Caitlin Weathers vs. Houston Methodist Hospital

**CAUTION:** The sender of this message is external to the EEOC network. Please use care when clicking on links and responding with sensitive information. Forward suspicious emails to phishing@eeoc.gov.

Does this offer enough information to get started?

[Quoted text hidden]

---

**Caitlin Weathers** <j.weathersca@gmail.com>                    Tue, Aug 2, 2022 at 10:16 PM
To: RAFAEL RIVERA <RAFAEL.RIVERA@eeoc.gov>

Yes, when I met with Mariana and Sunila together they issued a "PIP" plan but would not go over it with me as far as answering any questions for further information on what it implied or when I asked for more specifics on how it would look to achieve the things in the pip plan they wouldn't discuss it with me. So, no coaching. Just the issuance of the paperwork.
[Quoted text hidden]

--
CW

---

**RAFAEL RIVERA** <RAFAEL.RIVERA@eeoc.gov>                    Wed, Aug 3, 2022 at 8:43 AM
To: Caitlin Weathers <j.weathersca@gmail.com>

Good morning,

Your charge of discrimination is ready for your signature. Please log in to the EEOC Public Portal and click "view charge documents." The website will ask if you wish to make changes to it. To sign it, select "No" to making changes.

Thank you,

[Quoted text hidden]

---

**Caitlin Weathers** <j.weathersca@gmail.com>                    Wed, Aug 3, 2022 at 3:59 PM
To: RAFAEL RIVERA <RAFAEL.RIVERA@eeoc.gov>

Good afternoon RAFAEL,

I've signed the document. How many days do I have to upload all of my documents?

-Caitlin
[Quoted text hidden]

--
CW

---

**RAFAEL RIVERA** <RAFAEL.RIVERA@eeoc.gov>
To: Caitlin Weathers <j.weathersca@gmail.com>

Thu, Aug 11, 2022 at 8:55 AM

Good morning,

Your case has now been reviewed by our legal team. As we discussed during our phone call, there was a possibility of dismissal and issuance of a notice of right to sue. We will be preparing and issuing this notice today. Your letter will contain all the information you need to move forward, but I have included this link with information on what to expect.

Filing a Lawsuit | U.S. Equal Employment Opportunity Commission (eeoc.gov)

[Quoted text hidden]

---

**Caitlin Weathers** <j.weathersca@gmail.com>
To: RAFAEL RIVERA <RAFAEL.RIVERA@eeoc.gov>

Wed, Aug 24, 2022 at 6:52 PM

Rafael,

I've received the Notice of Right to Sue, however, I'm unsure if I have two other documents that are being requested:

1. Position Statement from my Employer
2. Documentation of the actual charge

Could you help me with this?

Sincerely,
Caitlin Weathers
[Quoted text hidden]

--
CW

---

**Caitlin Weathers** <j.weathersca@gmail.com>
To:

Fri, Sep 9, 2022 at 6:19 AM

[Quoted text hidden]

--
CW

---

To:

Fri, Sep 9, 2022 at 6:35 AM

# EXHIBIT

# F

| | |
|---|---|
| **From:** | Caitlin Weathers |
| **To:** | Cerna, Nancy |
| **Date:** | Sep 9, 2022 at 9:31 PM |
| **Subject:** | Re: [EXTERNAL] Inquiry |

Nancy, Would it be possible to request a copy of my file to include documentation of the dispute resolution letters, pip forms, and notes from the meetings I had with HR? I requested copies of the PIP forms and Sunila said she would send me
ZjQcmQRYFpfptBannerStart
This Message Is From an External Sender
This message came from outside your organization.

Report Suspicious

ZjQcmQRYFpfptBannerEnd
Nancy,

Would it be possible to request a copy of my file to include documentation of the dispute resolution letters, pip forms, and notes from the meetings I had with HR? I requested copies of the PIP forms and Sunila said she would send me copies but she never did. Could someone please follow-up with me?

Sincerely,
Caitlin Weathers

On Fri, Aug 26, 2022 at 9:20 AM Cerna, Nancy <ncerna@houstonmethodist.org> wrote:

Hi Caitlin,


The Employee Relations manager for HMH-TMC is Andrew Taulton.


Kind regards,


Nancy Cerna

HR Generalist

Houston Methodist

346.238.6271


HR Resources for Employees: myHR.houstonmethodist.org

HMH 00384

# EXHIBIT

# G

Caitlin Weathers

HR Responses - Mariana Mondragon

Employee Concerns regarding harassment

1. 08/15/2021 - HR was contacted via the HR Hub by Caitlin Weathers with concerns. Senior HR Generalist Mariana Mondragon reached out on 08/16/2021 requesting her schedule and asking if she has shared her concerns with her supervisor.
2. 08/23/2021 - Senior HR Generalist Mariana Mondragon met with Caitlin Weathers to listen to her concerns from the email submitted on 08/15/2021. Next steps were discussed, including an explanation of how HR and leaders conduct investigations, including employee interviews.
3. HR conducted employee interviews with the employees from WT 11. We were not able to substantiate any of the concerns that Caitlin brought forward.
4. During the interviews and meetings with charge nurses and managers, HR and Sunila were informed of performance issues concerning Caitlin. The concerns were documented in a Performance DCR and a PIP was prepared to address these matters.
5. 09/01/2021 – HR and Sunila met with Caitlin to share that her concerns were unfounded and suggesting to ask for clarification was made for when she believes someone speaks to her in a disrespectful matter. Caitlin's statements describe employees making statements under their breaths.

Excluded from Equal Pay/Benefits

1. 08/20/2021 - 10:30AM Caitlin Weathers left a message for Preston Miller regarding her position and tuition assistance
2. 08/23/2021 – Email from Recruiting confirms the position Caitlin was hired into was part-time vs. full-time (HR Error) and requests approval for Sr HR Gen to convert to full-time, retroactively to her start date on 05/23/2021.
3. 08/24/2021 – Position standard hours error is addressed via email to Caitlin after it was missed from in person meeting on 08/23/2021 and notified it would be corrected back to transfer date in May.
4. 09/07/2021 – Caitlin is confirmed that her position was corrected back to 05/23/2021 to reflect full-time status and notified to expect an adjustment in cost of benefits.
5. Her pay rate has not been a topic of our conversations.

Meeting Discussion Points

1. The employee was not asked to resign.
2. She has demonstrated a lack of urgency when prioritizing her tasks. Sunila's comments referenced the demand of NICU and if that is the right spot for her.
3. Caitlin also demonstrates a need to improve her communication style with her coworkers to create a sense of teamwork and trust for accomplishing patient care needs.

Excluded from Annual/Retention Bonus

1. Retention Bonus will be paid in Dec 2021 if no FDCRs on file, has not been denied for this bonus.
2. Had expected a sign-on bonus for PCA transfer, but was not eligible as an internal movement.

Trainings

1. Sunila would like for Caitlin to prioritize her on the job training in her new capacity before participating in proposed training, especially those out of the need of WT11 – Neuro ICU.

Departmental Handbook

1. Does not exist, Sunila references the job description for PCA scope of work and orientation training.

# EXHIBIT

# H



Employee Name: CAITLIN WEATHERS

Employee Signature & Date: C. Weathers 9/27/21

## HOUSTON METHODIST JOB DESCRIPTION

**Job Code:** S038

**Job Title:** Patient Care Assistant

**FLSA Status:** Non Exempt

**Exemption Test:** N/A

**Date Initiated:** September 1, 2002

**Date Revised:** April 16, 2019

**Comp. Review:** July 7, 2019

### JOB SUMMARY

At Houston Methodist, the Patient Care Assistant (PCA) position functions as novice to competent and demonstrates basic knowledge and skills necessary to communicate appropriately and carry out delegated nursing assistant level tasks for assigned age-specific, diverse patient population, assisting in the delivery of patient care and services under the supervision of a licensed nurse. This position conducts hourly rounding to ensure patient needs are met and records data established by policy and procedure, and reports observations and patient problems to the licensed nurse. The PCA position performs basic patient care activities of daily living (ADL's) within unit specific defined limits and job scope, such as assistance with patient elimination, hygiene, comfort, safety, nutrition, and progress activity and practices Patient and Family Centered Care in concert with Houston Methodist ICARE values.

### PATIENT AGE GROUP(S) AND POPULATION(S) SERVED

Refer to departmental "Scope of Service" and "Provision of Care" plans, as applicable, for description of primary age groups and populations served by this job for the respective HM entity.

### HOUSTON METHODIST EXPERIENCE EXPECTATIONS

o Provide personalized care and service by consistently demonstrating our I CARE values:

- **INTEGRITY:** We are honest and ethical in all we say and do.
- **COMPASSION:** We embrace the whole person including emotional, ethical, physical, and spiritual needs.
- **ACCOUNTABILITY:** We hold ourselves accountable for all our actions.
- **RESPECT:** We treat every individual as a person of worth, dignity, and value.
- **EXCELLENCE:** We strive to be the best at what we do and a model for others to emulate.

o Focuses on patient/customer safety
o Delivers personalized service using HM Service Standards
o Provides for exceptional patient/customer experiences by following our Standards of Practice of always using Positive Language (AIDET, Managing Up, Key Words)
o Intentionally rounds with patients/customers to ensure their needs are being met
o Involves patients (customers) in shift/handoff reports by enabling their participation in their plan of care as applicable to the given job

### PRIMARY JOB RESPONSIBILITIES

*Job responsibilities labeled EF capture those duties that are essential functions of the job.*

HMH 00226

# EXHIBIT

# I

12:48

< 9

What???? That is horrible. I know one male there he is always is trying intimidate and talk to women crazy. They always take up for him. It might be him

I mean the same one

Subject

Text Message

# EXHIBIT

# J

Caitlin Weathers

2425 Capitol ST #2143

J.weathersca@gmail.com

(832) 314-6357

*Plaintiff Pro Se*

## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION

**Caitlin Weathers**

**v.**                                      **Case Number: 4:22-CV-04085**

**Houston Methodist Hosptial**

### SUMMARY OF RECOLLECTIONS

I began my employment with Houston Methodist Hospital on May 28, 2019. My introductory

role was within the position of a Patient Transporter. I was cross-trained by my department to

fulfill the role of a Patient Sitter during the Summer of 2020. On 09/17/2020 I reported illegal

activity due to a family visitor smoking marijuana in nearby stairwell. I could smell it in the

hallway and again when I opened the door to greet myself to the patient in the room. I reported

the illegal activity to the call center and also asked to speak the charge nurse on the unit. After a

lot of commotion by nursing staff she came and talked to me; initially staff were giggling and

laughing but then became cruel when I began trying to get help. When the CN came she had

asked the visitor if he was in possession and he said yes but said it was a very small amount. The

CN did not ask to see it and actually told him to keep that to himself. She said it was fine as long

as it was a small amount. I understand that laws are changing and that marijuana holds a lesser

fine than it has in previous years. However, I felt duty to report the illegal activity. I reported it to

the Assistant Manager Elizabeth Seay and she felt I did the wrong thing and she disciplined me

for it by giving me a communication record on or about the time I filed the report on 09/17/2020.

Then, on 10/09/2020 I received a letter of recommendation from my manager Shakindra

Gonzales. Later, I applied online for a PCA position on 04/29/2021 and shortly thereafter

received a text message about a hiring event. I was greeted by HR and taken to meet Sunila Ali

for my first and only interview on where she hired me on the spot. I then attended PCA

orientation training where I learned more about the basic hospital-wide scope of a PCA. Much of

training was spent listening to keynote speakers lecture about the hospital and the role I would be

fulfilling. I additionally learned that the hospital acquires most of its revenue, they estimated

approx. 80% or more, from Medicaid or Medicare. On 06/01/2021, I officially transferred to the

Patient Care Assistant Role on the Neuro ICU. I noticed when I got on the floor that I was the

only Non-Hispanic, Caucasian, White team member in my job role as a PCA, but I was

determined to succeed because I had been a high performing employee in my previous job roles

within the hospital, where I was also the only Non-Hispanic White Caucasian. While working I

could hear staff calling me trash in the background as I walked by but was able to ignore them

since I was still new and did not know everybody on the unit yet, not by name. Some of the

female co-workers had also started posturing toward me to "kiss their butt." But I could not

identify them because I was still new to the unit. When I started working on the unit after

orientation and training, I was assigned to work with a trainer named Gloria Gomez. Sunila told

Gloria that I could do everything that she does. Gloria was offended by this, and it came out in

how she trained me. My experiences training with Gloria: 1. Feedback issue: Sunila told Gloria

to show me how they do feedback. Gloria did not give me any instructions on the task itself but

showed me how to access the website. She let me sit with her and another PCA while they

whispered to each other about another person that I did not know. I asked her if Sunila had ever

given her any instructions or training on how feedback is to be given such as formatting techniques and skills to prevent bias and discrimination. Gloria said no. I told both Gloria and Sunila that I did not feel comfortable giving feedback without more information. I was never included in this again. 2. Left me out of important work meetings for PCA's. I received news that PCA meetings were cancelled without reason, but new rules were still being implemented based on PCA feedback. 3. Disappeared for hours 4. Did not give me information needed to do my job such as provide a written schedule or checklist of daily activities and when they would need to be completed by 5. Caused scheduling difficulties due to frequent changes and created a need for me to receive training from other employees, sometimes other new hires. 6. Required me to do humiliating and inappropriate things like clean up bowel movements all day for the nurses' patients while she wasn't able to be found anywhere. This was a frequent problem as the nurses would give the patients a medicine they called "lay-six" which resulted in multiple bowel movements a day, most often right at the end of my shift 7. The week before Sunila left for vacation, we met the three of us where Sunila again told Gloria that I can do everything that she does. Gloria said I do not want to. Sunila reiterated to her. Gloria looked at me and whispered, "I don't want to." Sunila was on vacation from 7/17 to 8/11. I was still within my first six months, as were the other two new hires that started a week or two before me. On 06/12/2021 I was told to get signed off on a set of skills required for the unit (annually) by a nurse named Kim Randle. After she signed me off, she said she had something she needed to tell me and let me know that there was a male student nurse she was training that liked me and then took me to the room where she was training him to introduce us. This was during COVID-19 and we were all still required to wear facemasks. When I got to the room, he had asked me to take off my facemask and I refused; I did not know who he was, and I had never met him before, and we had not been given permission to take our masks off, not by the government or the hospital. I think it was later

that day we worked together again but I was helping another male nurse named Aaron Walker. While working with Aaron he asked Cameron to come to the room to help us. When he got to the room the two guys started talking and Cameron then called Aaron gay, I tried to leave the room when this happened and as I did Cameron then called me a slut. To my knowledge, that was Aaron's last day of employment. After this event there were other instances where Cameron made me feel uncomfortable: 1. While working with Rachel Maebe (DeVlugt) who was training him, she had asked us both to help her move a patient up in bed. Cameron and I were standing side-by-side and Rachel was standing on the opposite side of the bed from us. She said it was on her count 1,2,3, and then Cameron refused to move and said he was not going to do it. Rachel and I both went but we needed his help. He didn't move on her count and jumped back after I bumped his arm because he did not move. When he jumped back, he said "hold on let me get a look at this." Told me to spread my legs then paused to watch me do it. Then he asked me to support my back. I tucked my tail in and then he said that was not what he wanted and when he left the room said he was going to tell Sunila. Sunila later told me that someone told her that I didn't use proper body mechanics and wouldn't tell me who gave her that feedback. 2. While emptying all the trash bins at the end of my shift, Cameron blocked the doorway so that I couldn't get out of his patient's room. He stood in front of the doorway staring at me as I stooped over the bin inside the room and wouldn't let me leave the room, "not until I'm done" while finishing his water. He took a breath while still staring at me and said, "suck my dick" then continued finishing his bottled water. 3. Told me to come here to help him with something. When I got to the room he said now stand there and seductively used his body to corner me. When I was where he wanted me to stand, he looked at me and lowered his head and chest like he was going to kiss my neck. Then he left the room, said not to go anywhere, brought in a nurse named Dacey Smith and told her to watch me while they stood side-by-side with each other

facing me from across the room. I asked what he wanted me to do, and he said nothing. I asked if I could leave, and he said no. The two of them stood across the room and just stared at me, whispering to each other before Cameron told me I could leave. 4. Another instance while taking out the trash, Cameron wouldn't let me walk by him. He told me to stand there and hold the >13 gal bag of garbage filled with waste for the full duration of his turn rounding with the doctor. He wouldn't let me pass by first so they could begin their discussion. This took longer than 10 minutes. 5. During the last week or two of my employment I remember Cameron having loud verbal outbursts from across the hallway. I was standing in front of Sunila's office in the hallway outside of a patient's room stocking supplies in the drawers and he would not stop blurting out inappropriate language. Nobody would say anything to him. Even Sunila was pretending not to hear anything. Until eventually Sunila got up and asked me "you're not going to do anything about this?" I told her I did not know what I was allowed to say, but I wanted it to stop. She said, "You want it to stop? I shook my head yes. She went over to talk to him to get him to quiet down. I remember hearing her ask him, "what do you want me to do? Do you want me to fire her? and he answered her "yes" she then said, "done!" and came back to her office. Meanwhile the hospital kept sending out notices that they needed more employees as people began to return to work as the COVID-19 spread was becoming more controlled. I received emails with incentives to get us to work more overtime hours or requests to pick up night shifts. The night shift employees had been giving me a tough time and I thought it was because they needed more help. While working an extra night shift one evening I overheard the night PCA's talking about me and how they did not like me or think I was pretty and whether they thought that Cameron really liked me. Specifically, a PCA named Brenda said that she did not believe he liked me and said, "go look at her hands, they're ugly." I reported this to Sunila, and she did not believe me. When Sunila finally met with me to discuss how I was being treated unfairly, it was in a meeting

with HR coordinator Mariana Mondragon, and she dismissed my complaints and punished with disciplinary documents to start the firing process. Sunila said she would give me an option to quit before giving me papers she had already filled out to inform me that they were initiating a Performance Improvement Plan. She said: 1. "Are you sure you want to work here?" 2. "Do you really think this is a good fit for you?" 3. "Don't be surprised if the other employees don't want to work with you anymore" 4. "You're not a team player" 5. She also revealed that she knew about a guy that liked me but said "I am not going to tell you who. I promised." I was scared and confused but was not ready to give up because I knew I had not done anything wrong that I was not supposed to have done. She wrote in the PIP that nurses had filed complaints that I had touched equipment that I was not supposed to have touched. I told Sunila that the nurses had given me directives to the opposite effect of what Sunila said was written about me in the complaints against me, or I would be fired. Sunila said, "I don't care" during the meetings with Mariana Mondragon in HR. I asked if there was a handbook available for her unit with written instructions that would more clearly define the policy she was referring to and she looked at me fascinatedly and said, "there isn't one and we're not going to do that." I told her that the other PCA's on her unit were already touching the equipment she was stating that she did not want me to touch, and she then said that it was different for the other (non-white) employees. In both cases, the patient was making demands and threatening to harm themselves if I were not to help them. I was given directives to help them by other nurses and by the patients. I had a duty and responsibility to help. 1. 8/19/2021: Instance with Cassie Hull who reported me for touching a piece of equipment used to drain puss called an EVD. Cassie left her patient alone so she could go to lunch and didn't let any of the other nurses know. When I got to the patient's room, they said they needed to get up to go to the bathroom. I could see that the drain was not clamped so I called her over the Vocera to ask if it was okay for this patient to get up. When I called her, she

said that it was fine and that she wasn't going to "go over there" and that the drain was clamped, and she had already done everything. But I told her over the Vocera that it wasn't, and the patient said he wasn't going to wait for her to come back and didn't care what we said, he was going to get up regardless of what we told him. Cassie responded by repeating to me that she wasn't going to come help, there was someone with her who she bickered with in the background how she was entitled to a lunch and shouldn't have to come to the room, and so I helped the patient. I clamped the drain the way I was taught while on the unit by both nurses and PCA's and helped the patient up to the bathroom. I was taught how to clamp the drain prior to this by Aaron Walker before he left. He said that I would be fired if I didn't learn this. If the patient had got up without the drain having been clamped, he could have seriously hurt himself had I not known how to clamp it. Cassie lied to Sunila about the circumstances of the situation and Sunila said she didn't care when I told her the truth, that it wasn't clamped prior to. This is a skill that my trainer Gloria performed routinely, and Sunila was aware of this. The patient was fine, and the only complaint was that there was a bubble in the line. This was the first and only time where I felt pressured by the nurse to have to do this for a patient, otherwise I never needed to. I was inappropriately criticized by the nurse after she came back from lunch. She confronted me in the hallway where she proceeded to have a loud, open, and humiliating conversation with me. Cameron was in the background instigating with more outbursts from across the hallway. 2. 8/17/2021: Instance with Amanda Ronning during a night shift I picked up to help out due to staff shortage. Amanda had a patient come in new to the unit with a pungent odor. I asked her if the sweet pungent odor could have been due to blood sugar levels as this may affect the frequency of blood sugar checks for this patient. She said no that she would take care of it. Soon respiratory care came to take care of this patient and had been monitoring him when Amanda left to transport her one other patient to an 'offsite' imaging location. When Amanda got back, this excited the patient that I was with,

and he began to frantically ask for water. He threatened to take off his oxygen mask and was shaking and rattling himself. I was concerned about what would happen to him if I didn't help him. The respiratory care nurse who was standing in the hallway just outside the door, told me to help him, that she was watching, and reiterated to me that I could help him and that she would come help me if she needed to. Which is what she did when Amanda was unable to get to the patient as she had just arrived back onto the unit and still had to attend to that patient before coming to check on this one. These were not the only times that issues of manipulation and conspiracy were used against me. On the last shift before my termination date, I was held in an impromptu meeting with Sunila where she said she had something important she wanted to talk to me about. She called me into the conference room as I was walking by and as soon as I sat down in the chair across from her, Cameron Shonk called me over the Vocera (telecommunication device) and asked if we could talk. Sunila nodded her head at me suggesting I could talk to him during our meeting. I told him I was with Sunila. He sighed and then Sunila asked him if everything was okay. They began talking to each other and Sunila took my Vocera from me. They continued their conversation for an hour, they ended the conversation with Sunila telling Cameron, "I promise I'll take care of you." He said, "ok now what do we do about, you know who I am talking about, she is right there," then Sunila said that we both needed to apologize to each other. She gave the Vocera back to me so he could make an apology. After he said, "I'm sorry" I asked, "what are you sorry for" and he refused to answer the question and began bickering with Sunila about it and then she forced me to say the words back to him. I felt violated and did not understand what was going on; nobody had talked to me during that whole conversation. I asked Sunila what it was that she wanted to talk to me about and she said she could not remember. Then I had to go to Sharon Agway's room to continue with the end of my shift and perform my last bath for the day and she was angry with me as soon as I arrived at the

room. She started yelling at me aggressively and asked why I was even there, what I wanted, yelled at me for not having been there sooner. I asked her about the patients SCD device because a new policy was being implemented for it which made requirements for all patients to always wear them. It also stated that it was not up to the nurse to discontinue the device. I asked the nurse if she had let anyone know that the patient was going to discontinue wearing the device because it was required of me to ask. She was angry with me and told me that it was not my job to tell her what to do and was not going to do this with me. She got angry and said let us not do this in front of the patient and started yelling at me in the hallway. She said what is the matter with you are you psychotic, what is it? Are you gay? Just tell me. I am a nurse. I am supposed to know these things. Then the CN named Marcus Veneracion came up to her and told her she had to stop. That she was being loud. That was my last shift before 10/4/2021 my last day of employment. That day, on 10/4/2021 I was called into HR by Sunila before I clocked-in and told to meet her in the new HR location. When I got there, I asked if we could have a third party sit in on the meeting because I didn't feel that I was being heard. I asked Andrew Taulton the Employee Relations Manager if he could help mediate between us. He agreed and when I told him what was going on he didn't understand why there was still a problem and asked me what I thought was the reason behind it. I answered him how I thought this was happening because I'm white and everyone in the room became dismissive and said no, we're not doing this. Sunila then asked me to leave the room to talk to Andrew. When I came back, he said that she had already made up her mind. Mariana then excitedly rose from her seat to hand me a termination paper. I wasn't aware I was being replaced at the time, however, there was a new girl who had just been hired a month before my last day and had just started finishing up with training. She was African American and I believe her name was Ashley. After I left, there would no longer have been any Non-Hispanic White Caucasian Patient Care Assistants employed on Houston Methodist

Hosptial's Neuro-ICU Unit. I was not able to afford the COBRA health insurance plan when I

left because it would have cost $1,000.00 a month and I wasn't earning any income. I applied for

health insurance benefits through Community Health Choice but wasn't approved until three

months later. Because of this I wasn't able to get treatment for harm caused until 04/11/2022.

THE STATE OF TEXAS

COUNTY OF Harris

BEFORE ME, the undersigned authority, on this day personally appeared

_Caitlin Weathers_ , who

swore or affirmed to tell truth, and stated as follows:

"My name is Caitlin Weathers, I am of sound mind and capable of making this sworn statement.
I have personal knowledge of the facts written in this statement. I understand that if I lie in this
statement I may be held criminally responsible. This statement is true."

State of Texas

County of Harris

SWORN to and SUBSCRIBED before me, the undersigned authority, on

the _21_ day of _June_ ,

_2023_ year,

by _Caitlin Weathers_

Notary Public, State of Texas [Notary's signature.]

JASMINE GONZALEZ
Notary Public, State of Texas
Comm. Expires 03-01-2025
Notary ID 130947831

**Certificate of Service**

As required by Texas Rule of Appellate Procedure 6.3 and 9.5(b), (d),

(e), I certify that I have served this document on all other parties—which are listed below—on 06/21/2023 as follows:

Scott Patton

5301 Katy Freeway, suite 201

Attorney for Sunila Ali and Houston Methodist Hospital

By personal delivery, mail, fax



Caitlin Weathers

06/21/2023

NOTES: Pursuant to Texas Rule of Appellate Procedure 6.3, a party's lead counsel must be served. Service on other attorneys for that party is optional, but must be listed above if they are served. Pursuant to Texas Rule of Appellate Procedure 52.7(c), the record must be served on each party in an original proceeding, including a respondent trial judge.

# EXHIBIT

# K

# EXHIBIT

# L

```
 1            THE COURT:  So I wanted to make sure that
 2   because you were concerned about your case being moved
 3   from judge to judge, that you understood what the
 4   procedural posture of the case is right now, okay.
 5            MS. WEATHERS:  (No audible response.)
 6            THE COURT:  There's also currently a Motion to
 7   Dismiss filed by Houston Methodist Hospital and Sunila
 8   Ali.  So one thing I want to take up with counsel for
 9   Houston Methodist Hospital is whether in this
10   particular case -- I've looked at it, I've reviewed it
11   briefly.  I haven't had the opportunity to review
12   everything in detail.  But to the extent that the
13   Motion to Dismiss that you have put forward cannot be
14   decided either on the face of the pleadings or on
15   documents that the Court is entitled to take judicial
16   notice of, the motion would have to be converted to a
17   Motion for Summary Judgment.
18            MR. PALMER:  That's correct, Your Honor.
19            THE COURT:  Is it your position that the
20   information that you rely on, I think that was filed
21   with your reply or your response, is all information
22   that's in the public record and of which the Court can
23   take judicial notice?
24            MR. PALMER:  Yes, Your Honor, that's correct.
25            THE COURT:  And tell me specifically what
```

1               MS. WEATHERS:  Yes and no.

2          THE COURT:  Okay.  When the motion is

3    converted to a Motion for Summary Judgment -- that's

4    under Rule 56 of the Federal Rules of Civil Procedure --

5    that places the burden on you to rebut the allegations,

6    to come forward with evidence to rebut the allegations;

7    do you understand that?  And it has to be evidence that

8    could be admissible at trial?

9               MS. WEATHERS:  What is the my time frame?

10          THE COURT:  If I can -- you've got to speak

11   into the microphone.

12              MS. WEATHERS:  What is the duration, the time

13   frame, the interval to have that documentation

14   submitted?

15          THE COURT:  So, when I -- let me -- it's 20

16   days after they file their motion.  I can either

17   convert the motion as is today, or would you prefer to

18   refile?

19              MR. PATTON:  Yes.  Yes, Your Honor, we would.

20          THE COURT:  Okay.  So can I have you make an

21   oral Motion to Withdraw the pending Motion to Dismiss

22   and I will grant permission to refile -- or to file a

23   Motion for Summary Judgment?

24              MR. PALMER:  Houston Methodist withdraws their

25   Motion to Dismiss pursuant to 12(b)(6).

# EXHIBIT

# M

 **Gmail**

Caitlin Weathers <j.weathersca@gmail.com>

---

### Caitlin Weathers Itinerary- Patient Safety and Elite

Ali, Sunila <SKAli@houstonmethodist.org>
To: "Weathers, Caitlin" <cweathers@houstonmethodist.org>, "j.weathersca@gmail.com" <j.weathersca@gmail.com>

Fri, May 28, 2021 at 2:51 PM

| Employee Name: | Caitlin Weathers | HR Coordinator | Mallory Ewart |
|---|---|---|---|
| Manager's Name: | Sunila Ali | Email: | mewart@houstonmethodist.org |
| Department: | ICU- NICU | | |

| | Report To: | Manager |
|---|---|---|
| **Tuesday 6/1** | Report Time: | 6:45 AM |
| | Location: | Walter Tower 11 |
| | Dress Code: | Scrubs - Galaxy Blue |

| | Report To: | Manager |
|---|---|---|
| **Wednesday 6/2** | Report Time: | 6:45 AM |
| | Location: | Walter Tower 11 |
| | | Scrubs - Galaxy Blue |

| | Report To: | Patient Safety & ELITE Onboarding |
|---|---|---|
| **Thursday 6/3 to Monday 6/7** | Report Time: | 7:30 am-4:30 pm |
| | Dress Code: | Scrubs - Galaxy Blue |
| | Location: | *Research Institute 2nd Floor* |

---

#### A Few Tips About NEO:

**Sign In:** You will be required to sign in at NEO and remain for the entire day. It is important for you to

do this in order to be paid for the day and fulfill our orientation requirements. Please arrive at least

15 minutes before the scheduled start time of 8:00 am.

**Employee Identification Badge:**

# EXHIBIT

# N

 AT&T 5Gᴇ　　　　**10:02 AM**　　　　



Sunila >

Sun, Aug 1, 9:42 AM

Hi Sunila,

May I speak with you in private
at some point?

I have an issue where I feel that
I am being harassed/
discriminated by people and
made to feel more
uncomfortable than I think is
normal for most other people.

I don't see others being treated
in like manner as I am.
Particularly, the night staff
PCA's who initiate
mistreatment. They show
comfortability in behaviors such
as yelling, embarrassing, use
slang terms that often are

Subject

 　　Text Message　　

      

.ıl AT&T 5Gᴇ     **10:02 AM**     





Sunila >

I don't see others being treated in like manner as I am. Particularly, the night staff PCA's who initiate mistreatment. They show comfortability in behaviors such as yelling, embarrassing, use slang terms that often are derogatory. The term "trash" is often referred to address me when passing by me. Then pretend to walk away like they didn't say anything.

This makes it uncomfortable for me when I feel like I work very hard toward quality improvement and the betterment of the facilities and my patients.

Example:

Subject

Text Message     

 

      

 AT&T 5Gᴇ          **10:03 AM**          

<



Sunila >

---

Tue, Aug 17, 2:15 PM

Sunila,

I contacted HR recently because I've been on the receiving side of Workplace Harrassment from some of the employees. Mainly employees who are not the same race/ ethnicity as me. For example, yesterday Brenda another PCA started gossiping about me and made a comment about my genetic information with regard to how my hands look. She made this comment to another PCA specifically using the word ugly. This is just one example of what's been an ongoing issue. I'm disappointed because I just completed my annual in-house

Subject

    Text Message

      

 AT&T 5Gᴇ          10:03 AM          



Sunila >

completed my annual in-house training on Methodists' Business Practices and it specifically states that it is against company policy to discriminate against other employees based on genetic information. But, again this is not the only occurrence. I don't know what to do but wanted to let you know that I did reach out to HR. I also let Dante know but he hasn't followed up with me after having let me know he received my message.

I want to let you know that I still love my job and don't want to give up. I am resilient and persistent and making a lot of progress.

Subject

    Text Message   

      

# EXHIBIT

# O

HMH 00438

Employee Signature: _____   Date: _____

*NOTE: Employee signature does not indicate agreement with the requirement of a PIP, only acknowledgement of receipt and understanding of expectations.*

Human Resources Signature: ~~Mariana Mondragon~~   Date: 9-1-21

Supervisor's Signature: _____   Date: 9/1/21

Second Level Signature: _____   Date: _____

Caitlin Weathers refused to signed today (9/1/21) until the document
is completed.

Caitlin Weathers_1061235_DCR Performance PIP_09-01-21

## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION

**Caitlin Weathers**

*Plaintiff*

**v.**

**Case Number: 4:22-CV-04085**

**Houston Methodist Hosptial,**

**and Sunila Ali**

*Defendants*

## TIMELINE

1. 05/28/2019: Hired to work at Houston Methodist as a Patient Transporter

2. 09/17/2020: Reported illegal activity to Elizabeth Seay, Assistant Manager of Patient Transportation Department that resulted in a communication record (discipline)

3. 10/09/2020: Received a Letter of Recommendation from Shakindra Gonzales, HM's Manager of Patient Transportation Department

4. 4/1/2021: Transferred to new department in capacity of PCA on WT 11 Neuro ICU

5. 7/17/2021-8/11/2021: Sunila Ali left for vacation

6. 7/25/2021 and 8/2/2021: Emailed Dante Macasaet about workplace bullying with no response

7. 8/1/2021: Texted Sunila Ali about harassment with no response

8. 8/15/2021: Emailed Mariana Mondragon in HR about concerns

9. 8/17/2021: Texted Sunila Ali about harassment with response

10. 8/23/2021: Met with Sunila Ali and Mariana Mondragon about the issue for the first time

11. 9/30/2021: Reported Sharon Agawy in writing for the second time regarding ongoing issues of harassment to Sunila Ali and Nancy Cerna

12. 10/4/2021: Terminated by supervisor Sunila Ali

13. 02/11/2022: Filed charge with EEOC

14. 04/11/2022: Observe Injuries

15. 08/03/2022: Signed Charge of Discrimination

16. 08/11/2022: EEOC issued Notice of Right to Sue Letter

17. 09/09/2022: Requested copy of employee record from HR

18. 09/22/2022: Discovered evidence of harassing behavior to others

19. 11/09/2022: Filed complaint to open lawsuit against Houston Methodist Hospital and Sunila Ali in-person at the courthouse

20. 05/22/2023: Received email from Scott Patton's Paralegal with Initial Disclosures

THE STATE OF TEXAS

COUNTY OF Harris

BEFORE ME, the undersigned authority, on this day personally appeared
Caitlin Weathers                                                    , who

swore or affirmed to tell truth, and stated as follows:

"My name is Caitlin Weathers, my date of birth is 02/18/1989, and my address is 2425 Capitol ST #2143, Houston, TX 77003. I declare under penalty of perjury that the foregoing is true and correct. Executed in Harris County, State of Texas, on the 21 DAY of JUNE 2023."

State of Texas

County of Harris

SWORN to and SUBSCRIBED before me, the undersigned authority, on

the $21$ day of June _____,

$2023$ year,

by _____ Jasmine Gonzalez

Notary Public, State of Texas [Notary's signature.]



JASMINE GONZALEZ
Notary Public, State of Texas
Comm. Expires 03-01-2025
Notary ID 130947831

## Certificate of Service

As required by Texas Rule of Appellate Procedure 6.3 and 9.5(b), (d),

(e), I certify that I have served this document on all other parties—which are

listed below—on 06/21/2023 as follows:

Scott Patton

5301 Katy Freeway, suite 201

Attorney for Sunila Ali and Houston Methodist Hospital

By: Fax

Caitlin Weathers

06/21/2023

NOTES: Pursuant to Texas Rule of Appellate Procedure 6.3, a party's lead counsel must be served. Service on other attorneys for that party is optional, but must be listed above if they are served. Pursuant to Texas Rule of Appellate Procedure 52.7(c), the record must be served on each party in an original proceeding, including a respondent trial judge.