# IN THE UNITED STATES DISTRICT COURT

## FOR SOUTHERN DISTRICT OF TEXAS

### HOUSTON DIVISION

United States Courts
Southern District of Texas
**F I L E D**

NOV 2 5 2024

Nathan Ochsner, Clerk of Court

**CAITLIN WEATHERS,**

*PLAINTIFF*

**V.**                                    **CIVIL ACTION NO. 4:22-CV-04085**

**HOUSTON METHODIST HOSPITAL,**

*DEFENDANTS*

## TABLE OF CONTENTS

Table of Authorities ………………………………………………………………..…………..…..3-6

Statement about the Proceeding's Nature and Stage………………………………….…………...…7

Introduction……………………………………………………………………………….…….…7-10

Statement of Facts………………………………………………………………………….....10-12

Causation Standards associated with the Claims………………………………….………....12-19

 A.  Prima Facie……………………………………………………………....…12-13

 B.  Retaliation………………………………………………………………....…13-14

 C.  Individual Liability…………………………………………………………14-15

 D.  Pretext…………………………………………………………………….…15-16

 E.  But for Cause…………………………………………………………….…..16-18

 F.  Harm…………………………………………………………………....………18

 G.  Fraud……………………………………………………………….……………18

 H.  Damages……………………………………………………………………18-19

Legal Standard toward Summary of Argument……………………………………….…....19-20

Argument………………………………………………………………………………..20-23

Conclusion…………………………………………………………………………….……23

Exhibit List……………………………………………………………………………….…24

Certificate of Acknowledgement…………………………………………………………...25

Certificate of Service………………………………………………………………….……26

Proposed Order....................................................................................27

## **AUTHORITIES**

*Arreola v Godinz*, 546 F. 3d 788, 795-96 (7th Cir. 2008)

*Auster Oil & Gas Inc. v Stream*, 764 F. 2d 381, 391 (5th Cir. 1985)

*Avatar Exploration, Inc. v. Chevron*, U.S.A., Inc., 933 F.2d 314, 321 (5th Cir. 1991)

*Brown v Wal-Mart Stores.*, L.P. 969 F. 3d 571, 578 (5th Cir. 2020) a case in which the plaintiffs alleged that Wal-Mart failed to keep its premises safe and train its employees, leading to the plaintiff's injuries. The case was filed in the Circuit Court of Baldwin County, Alabama, and the defendant removed the case to federal court on October 3, 2022. The plaintiffs' original complaint included the following counts: Negligence, Wantonness, Negligent/wanton hiring, training, supervision, or retention, Loss of consortium

*Bylin v Billings*, 568 F. 3d 1224, 1229 (10th Cir. 2009).

*Caudle Aviation, Inc. v. Hartford Fire Ins. Co.*, Civ. A. No. 06-4653, 2007 WL 60993

*C.F. v Capistrano Unified Sch. Dis*

*Connelly v. Lane Constr. Corp. 809 F.3d 780 (2016)*

*Desert Palace. Inc. v. Costa* (2003) Direct evidence of discrimination is not required for a plaintiff to obtain a mixed motive under Title VII. Title VII is violated when the workplace is permeated with discriminatory behavior that is sufficiently severe or pervasive to create a discriminatorily hostile or abusive working environment. This standard requires an objectively hostile or abusive environment, as well as the victim's subjective perception that the environment is abusive.

*Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)

*Evans v. City of Houston*, 246 F.3d 344, 254 (5th Cir. 2001), *Zamora v. City of Houston*, No. 4:07-4510, 2012 WL 4052884, at *6 (S.D. Tex. Sept. 13, 2012), *Starnes v. Wallace*, 849 F.3d 627, 634-35 (5th Cir. 2017)

*Foman v Davis*, 371 U.S. 178, 182 (1962)

*Gamma-10 Plastics, Inc. v Am. President Lines, Ltd.*, 32 F. 3d 1244, 1255-56 (8th Cir. 1994).

*Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 178 n.4 (2009)* Preponderance of the evidence (more likely than not) is the evidentiary burden under both causation standards. Id. at

*Hamilton v Dallas County, No. 21-10133 (5th Circ. 2022)*

*Hardin v Caterpillar (5th Cir 2000)*

*Harris v. FedEx Corporate Services, No. 23-20035 (5th Cir. 2024)*

*Jones v. Robinson Prop. Group*, L.P., 427 F.3d 987, 994 (5th Cir. 2005)

*Klunder v Brown University.*, 778 F. 3d 24, 34-35 (1st Cir. 2015)

*Kolstad v. Am Dental Ass'n* (1999)

*Mayeaux v La. Health Serv. & Indem. Co.*, 376 F. 3d 420, 427 (5th Cir. 2004).

*Medina v Ramsey Steel Co.*, 238 F. 3dd 674, 684 (5th Cir. 2001) the crucial, central issue is whether an employer can defeat an employee's claim via summary judgment at the prima facie case stage by claiming that he failed to meet entirely subjective hiring criteria. We do not think so.

*Meritor Savings Bank v. Vinson (1986)* A claim of hostile environment sexual harassment is a form of sex discrimination actionable under Title VII.

*Pasternack v Shrader*, 863 F.3d 162, 174 (2d Cir. 2017)

*Potter v. Bexar County Hosp. Dist.*, 195 Fed. App'x. 205, 208—09 (5th Cir. 2006)

*Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1104 (10th Cir. 1998) observing that suspensions and terminations by their nature adverse

*Runnion v Girl Scouts of Greater Chi &Nw. Ind.* 786 F.3d 510, 519-20 (7th Cir. 2015)

*McDonald v. Santa Fe Trail Transportation Company*

*Scott v. Fam. Dollar Stores, Inc.*, 733 F. 3d 105, 118-119 (4th Cir. 2013).

*Staub v. Proctor Hospital* (2011), *Long v. Eastfield College*, 88 F.3d 300, 306 (5th Cir. 1996), this was the only evidence needed: The summary judgment evidence establishes that Long and Reavis filed complaints against Clark and Kelley, that Clark and Kelley had knowledge of these complaints, and that Clark and Kelley recommended that Long and Reavis be terminated after learning of these complaints. Accordingly, we have no trouble finding sufficient evidence, for prima facie case purposes, to establish a causal link between Long and Reavis's protected activities and Clark and Kelley's recommendations. "Cat's Paw" theory. An employer can be held liable for discrimination even if the final decision-maker was not motivated by discriminatory animus, as long as a biased supervisor's actions were a significant factor in influencing the decision and resulted in an adverse employment action against the employee; essentially, the supervisor "pulled the strings" to cause the discriminatory outcome

*Stripling v. Jordan Prod. Co.*, LLC, 234 F.3d 863, 872—73 (5th Cir. 2000).

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002) A plaintiff does not need to plead specific facts that establish a prima facie case in a complaint to survive a motion to dismiss for failing to state a claim.

*Teague v. Williamson County*, No. 1:18-cv-1098-RP, 2020 WL 2542869, at *13 (W.D. Tex. May 5, 2019

*Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2534 (2013)* holding that causation is required to prove Title VII retaliation claims raised under 42 U.S.C. § 2000e-3(a), even though allegations raised under other provisions of Title VII only require motivating factor. Title VII retaliation claims must be proved according to traditional principles of but-for-causation

*Vance v. Ball State University, 133 S. Ct. 2434 (2013)*

*Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993)

### WEATHERS' *UNOPPOSED* MOTION FOR LEAVE TO FILE *FIRST* AMENDED COMPLAINT

Plaintiff Weathers respectfully moves the Court, under Rule 15 of the Federal Rules of Civil Procedure and the October 21, 2024, Scheduling Order, for leave to file an **amended complaint,** a copy of which is attached hereto. (A) Federal Rule 15 covers amended pleadings and states that a party can amend their pleading once a responsive pleading is served. This *unopposed* motion precedes an answer as to how the defendants will plead to the substance of Weathers's claims. Therefore, this motion seeks to initiate further proceedings *as a matter of course* following the September 26, 2024, order from the Fifth Circuit Court of Appeals. (B) The objective is to conform the complaint to evidence and mandate, provide clarification and develop the case further, and include amendments requesting additions to the original complaint.

### INTRODUCTION

On November 16, 2022, Weathers submitted her initial complaint of discrimination, harassment, and retaliation to the U.S. Court for the Southern District of Texas. (C) In Weathers' complaint, she claims that Houston Methodist Hospital and Sunila Ali discriminated against and retaliated against her based on her race and sex after engaging in protected activity, which is inscribed in the Charge of Discrimination issued on August 11, 2022. (D) The particulars of this dually filed case read,

*"On or about October 4, 2021, I was discharged from my position as a Patient Care Assistant. I believe my termination is discriminatory based on my race (white) and sex (female). The alleged reason for my termination is performance, which I believe to be a pretext for discrimination because my performance first came into question shortly after complaining of harassment. From April 1, 2021, until my termination, I was harassed by Cameron Shonk,*

*Sharon Agway, Cassie Hull, and Amanda Ronning. I reported the harassment to management officials Dante Macasaet, Sunila Ali, and Mariana Mondragon during all of August 2021, but I was ignored, and the harassment continued. Here are a few examples of the harassment I had been subjected to: I was called "white trash" by Cameron Shonk, I was called "psychotic" and "gay" by Sharon, and I was subjected to daily bullying from Cassie Hull and Amanda Ronning. On or about August 23, 2021, I finally met with Sunila Ali and Mariana Mondragon about the issue for the first time. During this meeting, instead of my complaint being listened to, my "fit" within the company was questioned. Shortly after this meeting, I suffered tangible harm when I was terminated. I believe that I was retaliated against for complaining about harassment and discriminated against because of my color, race, and sex in violation of Title VII of the Civil Rights Act of 1964, as amended."*

There was no ruling on the substance of this claim in previous proceedings at the summary judgment stage. At that time, the discovery was cut short, and the defendants were given an unfair advantage by having never designated a designee to answer Weathers's interrogatories; the defendants never answered; only Weathers responded to the defendant's interrogatories. On October 10, 2023, Hon. Mag. Christina Bryan's opinion and orders were based solely on Whether the Plaintiff's EEOC Charge of Discrimination was timely and whether Title VII allows the Plaintiff to assert a claim against individuals. (E) The 5th Circuit Court of Appeals affirmed that Title VII does not impose liability on individuals but did not mention applicability to other avenues. However, the mandate did find that Mag. Bryan abused discretion in refusing to apply equitable tolling to Weathers's claims. Thereby reversing and remanding the case back to the district court, ordering that the defendants file a plea and that the district court rule on claims in the first instance, initiating further proceedings.

Accordingly, Weathers seeks to perfect her initial complaint by incorporating additional details and explanations as the case has evolved, allowing for a decision based on *merit* instead of an erroneous application of procedural technicality. These supplementary details facilitate a fair resolution, which is necessary to resolve the dispute without the need for a concurrent impending lawsuit. As such, Weathers seeks to amend to include the following:

1. Damages: compensatory, economic, pain & suffering, punitive damages, pre-judgment interest, injunctive relief, and harm (A, F1, F2, F3, F4)

2. Evidence: merit went toward the substance of Weathers' claims at the summary judgment stage but was not applied in the judge's decision. These material facts are favored in law and prove intentional discrimination. This evidence was unavailable at the time the initial complaint was filed. (E) A, D, E, G, H, L, M, O

3. New Evidence: records not submitted as evidence found in discovery after the initial complaint that goes toward the substance of Weathers' claims but was previously not necessary to answer the two questions asked at the summary judgment stage. (H) H1. Reported illegal activity to Elizabeth, H2. List of PCAs and respective races compared to CW – identifying CW as the only white PCA on the unit; H3. Report to Dante; H4. HMH policies, H5. Report about PCA refusing to perform PCA tasks, H6. Sunila made direct promise to Weathers for unit requirements, H7. Definition of misconduct, H8. Derogatory language used by Sharon Agway during that went toward ultimate decision to terminate Weathers after recurrence which necessitated another report by Weathers, H9. Last report

4. Vital Statics and Job Qualifications for Prima Facie elements were submitted with the initial complaint. Still, they were not necessary to answer the two questions

that were asked at the summary judgment stage. (I) 1. Birth Certificate, 2. Academic Record Confer date, 3. HS diploma, 3. CNA certificate, 4. Recommendation letter-1, 5. Recommendation letter-2, 6. Sitter training certifications, 7. Pre-licensure BSN program acceptance, 8. Current Resume

5. Statutes and Relevant Laws: 42 U.S. Code 1981, 1981a-2000h, 42 U.S. Code 2000e–2; 18 U.S.C. Section 1001, Tex. Lab. Code 21, Houston Code of Ordinances, Texas Penal Code Ch. 32: Fraud-nondisclosure, Executive Order 1-50, 28 U.S.C. § 1367 Supplemental Jurisdiction

6. Legal Precedence and causation standards as part of this motion

## STATEMENT OF FACTS

Weathers is a non-Hispanic, White, Caucasian Female born on February 18, 1989. On May 28, 2019, Weathers was hired by Houston Methodist Hospital as a Patient Transporter. On July 1, 2020, Weathers completed Patient Sitter cross-training. On August 16, 2020, Weathers completed an Associate of Science in Psychology degree. On September 17, 2020, Weathers reported illegal activity. On October 09, 2020, Weathers received a letter of recommendation from management in response to having expressed a prior interest in enlisting in the U.S. military, and on the same day, she received a communication record (discipline) for the report of illegal activity. On February 1, 2021, Weathers was accepted into the University of Texas at Arlington's (AO) Pre-licensure Bachelor of Science in Nursing Program. On June 6, 2021, Weathers was internally transferred to the Position of a Patient Care Assistant in the Methodist's Neurosurgical Intensive Care Unit. A month later, without being provided any unit-specific requirements as promised, Sunila left for vacation between July 17, 2021, and August 11, 2021. On August 1, 2021, Weathers reported to Dante without response and then to Sunila about

Mariana Mondragon in Human Resources (HR) about concerns. Weathers then texted Ali again, informing Ali that she had contacted HR.

HR interviewed Weather's co-workers about her complaints but failed to acknowledge evidence of discriminatory conduct. This evidence that was observed in discovery shows further discriminatory language (i.e., the term "crazy") was used by Sharon Agway, a named co-worker that Weathers previously reported for harassment, as well as other inappropriate name-calling. On August 23, 2021, Weathers met with Sunila Ali and Mariana Mondragon to discuss Weathers's reports of discrimination and harassment, but instead of presenting an opportunity to resolve the matter by providing unit-specific requirements as described in the job description, Ali and Mondragon placed Weathers on a performance improvement plan (PIP), without coaching. The subjective criteria in the PIP do not substantiate any defined unit-specific requirements for PCAs, such as department policies, procedures, and protocols. Ali followed up with Weathers in September regarding job performance without ever intending to fulfill this promised expectation for unit-specific requirements as Ali pledged to Weathers. Then again, on September 30, 2021, Weathers reported on her co-worker, Sharon Agway, again regarding ongoing issues of harassment. Four days later, on October 4, Methodist fired Weathers.

To date, defendants have yet to produce evidence without a causal connection to intentional discrimination and have failed to answer how they plead. The evidence that supports Weathers's claims includes A, D, E, G, H, L, M, O., which represents the following factual material: Charge of Discrimination; Records with the EEOC, which includes a timeline; Mariana Mondragon's notes that make a direct admission of falsity; Job description, which includes reference to defined "unit-specific requirements" that were not provided to Weathers during any time of her employment with the hospital; Confirmation that Sunila Ali hired Weathers; Dates of

reports to Sunila Ali about discrimination referencing disparaging comments and inappropriate touch as pertains to sex and race; and an Unsigned termination letter proving adverse harm within proximity to reports and that the termination was against Weathers's will.

## CAUSATION STANDARDS

### *Prima Facie*

To establish a prima facie case of discrimination using the McDonnell Douglas framework while incorporating the 'motivating factor' standard from Arlington Heights, a plaintiff must demonstrate the following four elements: (1) they belong to a protected class, (2) they were qualified for the position, (3) they suffered an adverse employment action, and (4) that a discriminatory reason was a motivating factor behind the action taken against them; meaning the discriminatory intent was at least *one* factor influencing the decision, not necessarily the sole reason. The *Prima Facie* elements being requested into evidence by an amendment that goes toward the substance of claims, which were submitted with the initial complaint, but not all of which were necessary to answer the two questions that were asked at the summary judgment stage, are as follows:

Member of a Protected Class: Birth certificate, which authenticates that Weathers is a non-Hispanic, White, Caucasian Female

Qualified for the Position: High School Diploma, Certified Nurse Aide Certification, Associate of Science Degree in Psychology, Resume, acceptance into the University of Texas at Arlington's (AO) Pre-licensure BSN program, Houston Methodist Hospital's PCA job description for the Neuro ICU unit, Patient Sitter Certifications

Adverse Employment Action: Termination letter, PIP

<u>Motivating Factor</u>: Reports of harassment and discrimination to Sunila Ali that received merit toward substance of claims; HR notes from Mariana Mondragon where Sunila Ali stated that departmental handbook with unit-specific requirements "did not exist"; list of PCAs on the unit that were similarly situated which identifies the races of each employee proving Caitlin Weathers was the only White employee within her role

The evidence of reports to Sunila that have received merit proves that Weathers engaged in protected activity and reasonably good faith, opposed discrimination and harassment, and that HMH and Sunila Ali were aware of the protected activity. Thus, it is reasonable to believe this is a causal connection because the two main ways to prove a causal connection are (1) temporal proximity and (2) knowledge of the protected activity by the person who took or recommended the adverse action. *Teague v. Williamson County*, No. 1:18-cv-1098-RP, 2020 WL 2542869, at *13 (W.D. Tex. May 5, 2019 The agency with expert knowledge on this matter, the EEOC, found, as evident in the Charge of Discrimination, that the adverse actions in an ultimate employment decision by Sunila Ali and Houston Methodist were tangible harm in causal connection to the protected activity, and thus pretextual. Additionally, a *prima facie* case is an evidentiary standard, not a "proper measure of whether a claimant fails to state a claim," or is required to plead specific facts in a complaint to survive a motion to dismiss or failure to state a claim. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002) Rather, regardless of which proof method is used, the ultimate question is whether the recipient acted intentionally based on prohibited factors in the totality of the relevant facts.

*Retaliation*

The unsigned termination letter is more than sufficient evidence for proof, accepted and favored by law, of adverse and ultimate employment action as it affected employment terms,

conditions, and privileges. *Hamilton v Dallas County* Terminations, by their nature, are

unfavorable. *Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1104 (10th Cir. 1998). The

reports to Sunila and the ultimate employment action are not wholly unrelated. *Medina v*

*Ramsey Steel Co.*, 238 F. 3dd 674, 684 (5th Cir. 2001) Under the Fifth Circuit, if an adverse

action happens within four months of a plaintiff's protected activity, a prima facie causation

is established. *Evans v. City of Houston*, 246 F.3d 344, 254 (5th Cir. 2001), *Zamora v. City of*

*Houston*, No. 4:07-4510, 2012 WL 4052884, at *6 (S.D. Tex. Sept. 13, 2012), *Starnes v.*

*Wallace*, 849 F.3d 627, 634-35 (5th Cir. 2017) The two months between August 1, 2021, and

October 4, 2021, fall well within this timeframe. Anti-retaliation laws extend to many

individuals, including non-Hispanic white Caucasian females, who make formal or informal

reports of violation in opposition to discrimination and harassment. *McDonald v. Santa Fe*

*Trail Transportation Company*

### Individual Liability

In *Vance v. Ball State University, 133 S. Ct. 2434 (2013),* the Court held that an employee

is a "supervisor" if the employer has empowered that employee "to take tangible employment

actions against the victim, *i.e.*, to effect a 'significant change in employment status, such as

hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a

decision causing a significant change in benefits.'" The Court stated that an employer is liable for

hostile work environment harassment by employees who are not supervisors if the employer was

"negligent in failing to prevent harassment from taking place." In assessing such negligence, the

Court explained, "the nature and degree of authority wielded by the harasser is an important

factor to be considered in determining whether the employer was negligent." Also relevant is

"[e]vidence that an employer did not monitor the workplace, failed to respond to complaints,

failed to provide a system for registering complaints, or effectively discouraged complaints from being filed."

## Pretext

Pretext can be proven by any evidence that casts doubt on the faith of the employer's proffered justification for the adverse employment action. *Brown v Wal-mart Stores*. 969 F.3d at 578 (5th Cir. 2020) If a supervisor performs an act motivated, at least in part, by discriminatory animus intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, the employer is liable. *Staub v. Proctor Hospital* (2011), *Long v. Eastfield College*, 88 F.3d 300, 306 (5th Cir. 1996) Direct evidence of discrimination is not required for a plaintiff to obtain a mixed motive under Title VII. Title VII is violated when the workplace is permeated with discriminatory behavior that is sufficiently severe or pervasive to create a discriminatorily hostile or abusive working environment. This standard requires an objectively hostile or abusive environment, as well as the victim's subjective perception that the environment is abusive. *Desert Palace. Inc. v. Costa* (2003) Reports of harassment and discrimination were made throughout all the month of August. Sunila Ali admitted that there was "overall misconduct" in her pretextual allegation, in which she claimed Weathers was a contributor. However, Houston Methodist of Weathers never substantiated any actual misconduct during earlier proceedings that proved intentional harm, nor was the proffered reason without relation to the "But-for" cause and pre-textuality. Weathers co-workers Cassie Hull, Amanda Ronning, and Sharon Agway lied and made false statements about Weathers. A claim of a hostile work environment that includes sexual harassment is a form of sex discrimination that is actionable under Title VII. *Meritor Savings Bank v. Vinson (1986)*. while temporal proximity between a protected activity and an adverse employment action may not

consistently demonstrate pretext, "other evidence, in combination with temporal proximity, is sufficient for a reasonable jury to find but for causation." *Brown v Walmart Stores,* where Sunila Ali and HMH collectively had at least one discriminatory motive, intended an adverse action, and there was proximate cause, termed "cat's paw" theory, can be applied to Weathers. *Staub v. Proctor Hospital* (2011)

*"But-for" Cause*

A "but-for" causation is required to prove Title VII retaliation claims raised under 42 U.S.C. § 2000e-3(a), even though allegations raised under other provisions of Title VII only require "motivating factor" causation. Title VII retaliation claims must be proved according to traditional principles of but-for causation. *Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2534 (2013)* Weathers easily meets this standard as she was disciplined without reference to any defined unit-specific requirements as stated in the job description, demonstrating a material act of falsity. HMH and Sunila Ali are 100% at fault for that falsity. Knowledge of the activity protected by the person who made the adverse decision is also usually the reason. Houston Methodist Hospital knew this fact and did nothing to cure it, as it was written in Mariana Mondragon's notes that unit-specific requirements, as would be found in a handbook, "does not exist." The Fifth Circuit has found sufficient knowledge of the protected activity, where the decision maker responded to the discrimination complaint, and reasoned knowledge of protected activity from their response. A company's departure from established policy or practice and an employment record inconsistent with adverse action can show a *prima facie* causal link. *Staub v. Proctor Hospital* (2011) HMH's policies on misconduct are defined as "Misconduct - an intentional act to harm or deceive; reckless or intentional disregard for standard operating procedures or the law; or a violation of a policy or rule adopted to ensure orderly work and the

safety of employees. Unlike Ali, Weathers' actions did not meet this definition of misconduct, and without defined unit-specific requirements, accusations of poor performance are made under false pretenses. The preponderance of the evidence (more likely than not) is the evidentiary burden under both causation standards, emphasizing that there is no heightened evidentiary requirement under the "but-for" causation standard—Gross *v. FBL Fin. Servs., Inc., 557 U.S. 167, 178 n.4 (2009)*

The same evidence applies to retaliation claims and discrimination based on race and sex that have already been accepted and favored in law toward the merit of claims. The admission that the defendants did not provide unit-specific requirements proves a falsity and failure to act, made within proximity to harm. HMH effectively acted to penalize Weathers by placing her on PIP, leading to subsequent termination and tangible harm. An employer's failure to comply with the plain language of its policy is enough to raise a genuine issue of material fact as to the valid reason for firing an employee. HMH and Sunila Ali's stated reason to rebut discrimination is not credible because the Job Description stated that Weathers would be provided with *defined* Unit Specific Requirements; Sunila Ali further promised Weathers, ensuring she could "rest assured everything would be taken care of" during unit orientation. But, before leaving for vacation, Sunila Ali never followed this promise.

"But for" causation does not require proof that retaliation was the only cause of the employer's action but that the adverse action would not have occurred without a retaliatory motive. Circuit courts analyzing "but-for" causation under other EEOC-enforced laws also have explained that the standard does not require "sole" causation. Nothing in Title VII requires a plaintiff to show that illegal discrimination was the sole cause of an adverse employment action. To this effect, there was a ruling that the "but-for" causation required does not mean "sole cause,"

rejecting the defendant's challenge to Title VII jury instructions because "a 'but for' cause is simply not synonymous with 'sole' cause."

*Harm*

Tangible harm has been accepted into evidence and found in the Charge of Discrimination and the unsigned Termination Letter, which can be calculated. The harm need not be physical or even the type of harm that would permit an award of compensatory damages. The stigma that comes from intentional discrimination is cognizable harm enough.  Providing fewer or inferior services or benefits to a person or class will also satisfy the adversity req. Such as is the case in ultimate employment actions.

*Fraud*

To prove fraud under Sec. 32.47 (a) A person commits an offense if, intending to defraud or harm another, he destroys, removes, conceals, alters, substitutes, or otherwise impairs the verity, legibility, or *availability* of writing other than a governmental record. (b)  For this section, "writing" includes (1) *printing* or any other method of recording information. Sunila Ali promised Weathers that she would provide further details regarding *unit* orientation after Weathers completed her PCA orientation, implying that a departmental handbook would be provided as the job description states that *unit-specific* requirements would be *defined*.

*Damages*

A Title VII plaintiff may recover punitive damages upon proof that the defendant acted with 'malice or with reckless indifference to the federally protected rights of an aggrieved person.' This is law under Compensatory and Punitive Damages Available under § 102 of the Civil Rights Act 1991. This sets forth the position on compensatory and punitive damages

available under the Civil Rights Act of 1991, § 102, "Damages in Cases of Intentional Discrimination. "Thus, not every proof of pretext and discrimination is sufficient proof of malice or reckless indifference. *Hardin v Caterpillar (5th Cir 2000)* Ultimately, the terms malice and reckless indifference focus on the actor's state of mind. *Kolstad v. Am Dental Ass'n (1999),* where the employer's knowledge is that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination or retaliatory conduct. Thus, the defendant's employer must at least have retaliated in the face of a perceived risk that her actions would violate federal law to be liable for punitive damages. During the meetings held with Mariana Mondragon and Sunila Ali, Sunila responded to Weather's request for a departmental handbook for unit-specific requirements by saying, "It doesn't exist." Sunila Ali asked Mariana Mondragon not to write that down after saying it. Sunila Ali knew then that her actions were against the law and did so in the perceived risk.

## LEGAL STANDARD

The Federal Rules of Civil Procedure set forth a liberal policy in favor of permitting amendment of pleadings, and district courts are not to deny such amendments absent "a substantial reason" to do so. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981); *Potter v. Bexar County Hosp. Dist.*, 195 Fed. App'x. 205, 208—09 (5th Cir. 2006) (unpublished); see also *Caudle Aviation, Inc. v. Hartford Fire Ins. Co.*, Civ. A. No. 06-4653, 2007 WL 60993, at *1 (E.D. La. Jan. 5, 2007) (applying the relevant standards in a motion to amend pleadings to assert counterclaims and third-party claims). Indeed, the Fifth Circuit has long recognized that the Federal Rules "evince a favor of granting leave to amend." *Dussouy*, 660 F.2d at 597. Accordingly, while leave to amend "is by no means automatic," *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (quotation omitted), courts "should freely give leave when justice

so requires." FED. R. CIV. P. 15(a). When determining whether to grant a motion for leave to amend, courts in this circuit may consider several factors, including undue delay, bad faith or dilatory motive, repeated failures to cure deficiencies by amendments previously allowed undue prejudice to the opposing party, and futility of the amendment. *Jones v. Robinson Prop. Group*, *L.P.*, 427 F.3d 987, 994 (5th Cir. 2005); *Avatar Exploration, Inc. v. Chevron*, U.S.A., Inc., 933 F.2d 314, 321 (5th Cir. 1991). The definition of futility adopted by the Fifth Circuit includes circumstances in which a Case 6:09-cv-00035 Document 44 Filed in TXSD on 09/01/10 Page 2 of 6 3 proposed amendment to assert a claim would fail to state a claim upon which relief could be granted under Rule 12(b)(6). *Stripling v. Jordan Prod. Co.*, LLC, 234 F.3d 863, 872—73 (5th Cir. 2000).

## ARGUMENT

A court should grant Weathers leave to file an amended pleading unless Houston Methodist Hospital can show prejudice, bad faith, or undue delay. *Foman v Davis*, 371 U.S. 178, 182 (1962); *see Runnion v Girl Scouts of Greater Chi &Nw. Ind.* 786 F.3d 510, 519-20 (7th Cir. 2015). In this case, there is no prejudice, bad faith, or undue delay because this is an unopposed motion to amend a complaint that comes before the court before the mutually agreed upon scheduling order's deadline on November 29, 2024. Disallowing such an opportunity after agreeing before the court would be bad faith. Additionally, there is no prejudice or undue delay to the defendants because there is an order from the 5th Circuit that mandates by law that the case be developed with further proceedings, necessitating an amended pleading to include information drawn from the higher court.

Leave to amend should be freely given when justice is required. Fed. R. Civ. P. 15(a)(2); *Foman*, 371 U.S. at 182; *C.F. v Capistrano Unified Sch. Dis*, 654 F. 3d 975, 985 (9th Cir. 2011);

*Bylin v Billings*, 568 F. 3d 1224, 1229 (10th Cir. 2009). In this case, justice requires leave to amend as a matter of course under Fed. R. Civ. P. 15 because this is the first amendment in a case before the court for the first time on remand.

The court should allow the filing of Weathers's amended complaint because it's appropriate and necessary. *Gamma-10 Plastics, Inc. v Am. President Lines, Ltd.*, 32 F. 3d 1244, 1255-56 (8th Cir. 1994). In this case, leave to amend is appropriate and necessary because new information and evidence have been introduced since the initial complaint was filed. Weathers seeks to add additional information to the initial complaint to conform to the nature of the case.

The court should allow the filing of Weathers's amended complaint because Houston Methodist Hospital will not be prejudiced by the amended pleading *Pasternack v Shrader*, 863 F.3d 162, 174 (2d Cir. 2017); *Klunder v Brown University.*, 778 F. 3d 24, 34-35 (1st Cir. 2015); *Scott v. Fam. Dollar Stores, Inc.*, 733 F. 3d 105, 118-119 (4th Cir. 2013). Houston Methodist Hospital will not be prejudiced by the amended pleading because 1) the amended complaint is more specific than the initial complaint, 2) the more specific amendments are timely, 3) Weathers' discovery has only been through documents this far, whereas defendants have already taken Weathers interrogatories, 4) The defendants haven't given an answer yet as to how they'll plead, 5) it's procedurally appropriate as the amended pleading initiates further proceedings as ordered by the 5th circuit court of appeals.

The court should allow the filing of Weathers's amended complaint because Weathers is not guilty of undue delay. *Scott v. Fam Dollar Store, Inc.*, 733 F. 3d 105, 117-18 (4th Cir. 2013). See *Foman v Davis*, 371 U.S. 178, 182 (1962). Weathers diligently began moves to amend as soon as it became apparent that the amendment was necessary and opportunity available. See

*Arreola v Godinz*, 546 F. 3d 788, 795-96 (7th Cir. 2008); *Auster Oil & Gas Inc. v Stream*, 764 F. 2d 381, 391 (5th Cir. 1985)

The court should allow the filing of Weathers's amended complaint because Houston Methodist Hospital will not be prejudiced by any delay that Weathers's amended complaint may cause. *Pasternack v. Shrader*, 863 F. 3d 162, 174 (2d Cir. 2017); *Auster Oil & Gas, Inc. v. Stream*, 764 F. 2d 381, 391 (5th Cir. 1985). There is no prejudice in leave to amend because the amendment is requested early in the case, there's no surprise to the defendants who are already aware of the facts, and there is no undue delay as the amendments are requested well before the agreed timeframe. The statute of limitations has not yet expired on all remedies available to Weathers.

The court should allow the filing of Weathers's amended complaint because the court will not be substantially burdened by any delay that Weathers's amended pleading may cause. See *Mayeaux v La. Health Serv. & Indem. Co.,* 376 F. 3d 420, 427 (5th Cir. 2004). In this case, the court will not be burdened by any delay because it is procedurally appropriate and comes before the court well within the agreed scheduling orders.

The court should allow the filing of Weathers's amended pleading because Weathers is not guilty of bad faith. *Foman v Davis,* 371 U.S. 178, 182 (1962) In this case, the court will not be burdened by the amended complaint because Weathers has diligently pursued her claims as stated and ordered by law in the 5th Circuit Court's orders.

The court should allow the filing of Weathers's amended complaint because the amendment is not futile. *Foman v Davis, 371 U.S. 178, 182 (1962)* In this case, an amendment to the complaint is not futile because the amendment deadline has not yet passed, and the discovery

deadlines have yet to be completed. There is still more discovery to be exchanged, evidence that received merit to support the substance of claims that were not applied, the statute of limitations has not expired on all available remedies, and the court has jurisdiction over these claims. In *Connelly v. Lane Constr. Corp. 809 F.3d 780*, her Prima Facie case was allowed to proceed where discovery had yet to be completed, and she had sufficient evidence to believe that discrimination and retaliation likely occurred. In another more recent case, *Harris v. FedEx Corporate Services, No. 23-20035 (5th Cir. 2024)*, a woman's complaints were similarly investigated internally and rejected. She was also terminated for failing to meet PIP requirements, and evidence to support her claims of retaliation that fell mostly under disparate treatment was sufficient based on pretextual evidence.

## **CONCLUSION**

For the preceding reasons, Plaintiff respectfully requests that the Court grant Weathers's Unopposed Motion for Leave to File an Amended Complaint to incorporate the proposed amendments. Such changes are necessary to fully and accurately present Weathers's claims and will not prejudice the opposing party, allowing the Court to reach a just resolution.

## EXHIBIT LIST

A.  Amended Complaint

B.  Mandate

C.  Initial Complaint

D.  Charge of Discrimination

E.  Mag. Bryan Order and Opinion

F.  1. Last Paycheck issued for $0, 2. medication, 3. Cobra benefits, 4. The unsigned
    termination letter, 5. Diagnosis

G.  Exhibits with Merit that went toward the substance of Weathers claims in Mag Bryan's
    Opinion and Orders: (A, D, E, G, H, L, M, O.)

H.  1. Reported illegal activity to Elizabeth, 2. List of PCAs and respective races compared to
    CW – identifying CW as the only white PCA on the unit; 3. Report to Dante; 4. HMH
    policies, 5. Report about PCA refusing to perform PCA task, 6. Sharon Agway's
    documented use of discriminatory language, 7. Sunila's promise to provide unit
    requirements, 8.

I.  Birth Certificate and Job Qualifications: 1. Birth Certificate, 2. Academic Record Confer
    date, 3. HS diploma, 4. CNA certificate, 4. Recommendation letter-1, 5. Recommendation
    letter-2, 6. Sitter training certifications, 7. Pre-licensure BSN program acceptance

## <u>CERTIFICATE OF ACKNOWLEDGMENT</u>

THE STATE OF TEXAS, COUNTY OF Harris

BEFORE ME, the undersigned authority, on this day personally appeared

_Caitlin Weathers_____, who

swore or affirmed to tell the truth, and stated as follows:

My name is Caitlin Weathers; I have personal knowledge of the facts written in this statement. I understand that I may be held criminally responsible if I lie in this statement. This statement is true."

State of Texas

County of Harris

SWORN to and SUBSCRIBED before me, the undersigned authority, on

the _25_ day of _November_____,

_2024_____ year,

by_C. Weathers_____

_Janet Santamaria_____

JANET SANTA MARIA
Notary Public, State of Texas
Comm. Expires 05-06-2028
Notary ID 132466829

Notary Public, State of Texas [Notary's signature.]

## CERTIFICATE OF SERVICE

I certify that I have served this document on all other parties—which are

listed below—on  11 / 25 / 24  as follows:

Scott Patton

5301 Katy Freeway, suite 201

Attorney for Sunila Ali and Houston Methodist Hospital

By personal delivery, mail, fax

Caitlin Weathers

[ 11 / 25 / 24 ]

NOTES: Under Texas Rule of Appellate Procedure 6.3, a party's lead

Counsel must be served. Service on other attorneys for that party is optional

but must be listed above if they are served. Under Texas Rule of

Appellate Procedure 52.7(c), the record must be served on each party in an

original proceeding, including a respondent trial judge.