IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

CAITLIN WEATHERS,

*Plaintiff*,

v.                                                                   CIVIL ACTION NO. 4:22-CV-04085

Houston Methodist Hospital, et al.,

*Defendants*

**PLAINTIFF'S REPLY to HOUSTON METHODIST'S RESPONSE to PLAINTIFFS' SHOW CAUSE BRIEF**

In accordance with FRCP 11, Plaintiff submits this reply brief to address Houston Methodist's response and clarify the legal basis for the relief sought. The Plaintiff asserts that evidence and legal standards support the claims against Defendant Sunila Ali, justifying the continuation of this matter.

### BACKGROUND

This matter is an employment civil rights lawsuit alleging discrimination and retaliation.[1] Plaintiff filed her Original Complaint on November 9, 2022, in related case 4:22-mc-01978. It was subsequently filed and docketed in case 4:22-cv-04085 on November 16, 2022, by Judge

---

[1] Dkt. 1, Dkt. 62, Dkt. 66

1

Charles Eskridge,[2] contrary to Houston Methodist Hospital's inaccurate assertion of November 20, 2023, as the filing date.[3] On October 10, 2023, Magistrate Judge Christina Bryan, who is overseeing this case, acted beyond her authority in abusing her discretion by dismissing Plaintiffs' Title VII claims with prejudice.[4] On September 26, 2024, the Fifth Circuit Court of Appeals remanded Plaintiff's cause back to the District Court for further proceedings, having found that the District Court ignored relevant factors that should have been given significant weight.[5]

On December 12, 2024, Plaintiff's unopposed motion to file her first amended complaint was granted, and the same day, Plaintiff's first Amended Complaint was filed and docketed.[6] In the first Amended Complaint, Sunila Ali is no longer included as a party under Title VII but has been added as a separate individual party under 42 U.S.C. 1981.

On August 13, 2025, the District Court granted Houston Methodist's Motion for More Definite Statement and ordered Plaintiff to file a Show Cause Brief.[7] On September 2, 2025, Plaintiff filed her response to the Order to Show Cause.[8] Then, on September 16, 2025, Defendant Houston Methodist Hospital filed its response to Plaintiffs' Show Cause Brief.

Still pending is Plaintiff's Motion for Clarification as to the Order on her Motion for Miscellaneous Relief, whereby the Court granted virtual motions and hearings except for trial following Plaintiff's relocation over 1,100 miles away.[9]

---

[2] Dkt. 1
[3] Dkt. 106
[4] Dkt. 50
[5] Dkt 60, Dkt. 61, Dkt. 62
[6] Dkt. 64, Dkt. 65, Dkt. 66
[7] Dkt. 98
[8] Dkt. 105
[9] Dkt. 103, Dkt. 101, Dkt. 88

## STATEMENT OF ISSUES FOR REVIEW

Issue 1: Is it appropriate and ethical for Houston Methodist Hospital to sign and submit filings in place of a response from Sunila Ali, or does this create a conflict of interest that prejudices the Plaintiff, particularly considering Houston Methodist has yet to even provide the Plaintiff with the designated designee compelled as of March 17, 2025?[10]

Issue 2: Is it reasonable for Houston Methodist Hospital to continue to demand in-person depositions at their Houston office, given that virtual hearings and motions for all other matters—except for the trial—were allowed before the Plaintiff's relocation over 1,100 miles away?[11]

Issue 3: Did the higher court consider the Plaintiff's claims under 42 U.S.C. 1981 when evaluating the removal of Sunila Ali in her individual capacity in relation to the Title VII claims?[12]

Issue 4: Does the Plaintiff's Show Cause Brief represent, as asserted by Defendant Houston Methodist Hospital, "merely a disagreement with the District Court," or does it display a genuine effort to comply rather than outright refusal?[13]

Issue 5: Were Plaintiff's allegations "pure conclusions and subjective beliefs," or did the Show Cause Brief demonstrate that Sunila Ali was the relevant Supervisor in this case?[14]

---

[10] Dkt. 74
[11] Dkt. 88
[12] Dkt. 60, Dkt. 61, Dkt. 62
[13] Dkt. 106; Dkt. 105
[14] Dkt. 106; Dkt. 105

Issue 7: Did Sunila Ali have personal involvement as an active participant when signing her signature as the Supervisor of the Neuro ICU, authorizing the decision to terminate the plaintiff's employment?[15]

Issue 8: Can individuals be held accountable for their own personal discriminatory and retaliatory actions under Section 1981?

Issue 9: Do Plaintiff's allegations support her discrimination and retaliation claims against Sunila Ali?[16]

## SUMMARY OF ARGUMENT

***Plaintiff, Caitlin Weathers, was subjected to a hostile work environment based on race, illegally terminated, and retaliated against by Sunila Ali and Houston Methodist Hospital. The "but for" cause behind the termination was Plaintiff's race, and the action was intentionally taken in retaliation for Plaintiff's complaints of racial harassment.***

In its Response to Plaintiff's Show Cause Brief, Defendant Houston Methodist is the only party arguing for the dismissal of Plaintiff's 1981 cause of action against Sunila Ali. Additionally, the response includes a signature labeled "Attorney in Charge for Houston Methodist," which does not constitute a proper filing on behalf of Sunila Ali. Houston Methodist argues that Plaintiff fails to allege sufficient facts to support her claims; however, the Plaintiff contends that the facts and circumstances surrounding the employment relationship and the actions of Sunila Ali directly contradict this assertion. The Plaintiff's allegations detail specific instances of discriminatory conduct and retaliation, supporting the claim that Sunila Ali played a

---

[15] Dkt. 105
[16] Dkt. 105; Dkt. 66; Dkt. 65

pivotal role in the decision-making process that led to the Plaintiff's termination. Therefore, the Plaintiff argues that the allegations not only support the claims set forth but also indicate that allowing the case to proceed against Ali is not only warranted but essential for the pursuit of justice in this matter.

## STANDARD OF REVIEW

In accordance with FRCP 15(a) and FRCP 20, this Show Cause Reply Brief in opposition to Defendant Houston Methodist Hospital's response explains the justification for adding Sunila Ali under 42 U.S.C. 1981 and is based on the Court's order filed on August 13, 2025.

## ARGUMENT

Issue 1: <u>Is it appropriate and ethical for Houston Methodist Hospital to sign and submit filings on behalf of Sunila Ali, or does this create a conflict of interest that prejudices the Plaintiff, particularly since Houston Methodist has yet to provide the Plaintiff with the designated designee compelled as of March 17, 2025?</u>

Under FRCP 11, the core legal principle held, with limited exceptions, is that each party in a lawsuit must represent their own interests and sign documents on their own behalf. A party cannot sign for another defendant in the same case, even with informed consent, because courts are responsible for ensuring that all litigants have agreed to the terms of a legal filing or settlement. Allowing one party to sign for another circumvents this certification process. Additionally, under ABA Model Rule 1.13 a lawyer's client is the organization itself, not its constituents such as directors, supervisors, or other employees. If the company and individual need to file a joint motion, they should ensure that the motion's contents clearly state whose behalf it is being filed. Here, the Defendant's response to Plaintiff's Show Cause Brief does not

make clear that it is being filed on behalf of both parties. A motion filed by a company on behalf of a co-defendant is procedurally improper and subject to being struck from the record. *United States v. Harris, 567 F.2d 196 (5th Cir. 1978); A & C Properties, 784 F.2d 1377 (9th Cir. 1986); O'Malley v. U.S. Bank, N.A., 801 F.3d 612 (6th Cir. 2015)*

Additionally, the failure of Houston Methodist to provide Plaintiff with the designated designee compelled by the court as of March 17, 2025, further exacerbates this issue. According to the doctrine of procedural fairness and due process, every party must have equal access to information and representation. By withholding the designated designee for Houston Methodist Hospital, the hospital not only disregards the court's legal process but also limits Plaintiff's ability to mount a proper defense, thus violating the Plaintiff's rights. *Goldberg v. Kelly (1970); Mathews v. Eldridge (1976); Williams v. Pennsylvania (2016); Roth v. Board of Regents (1972); Ferguson v. City of Charleston (2001)*

Given these legal standards and precedents, I assert that allowing Houston Methodist to sign and submit documents, whether instead of or on behalf of Sunila Ali (which is unclear here), not only violates ethical considerations but also poses significant risks to a fair resolution of this matter. I urge the court to intervene to ensure that the rights of the Plaintiff are protected and that the principles of justice are upheld.

Issue 2: <u>Is it reasonable for Houston Methodist Hospital to continue to demand in-person depositions at their Houston office, given that virtual hearings and motions for all other matters—except for the trial—were permitted by the District Court before the Plaintiff's relocation over 1,100 miles away?</u>

It is unreasonable for Houston Methodist Hospital to insist on in-person depositions at its Houston office, especially given the circumstances of Plaintiff's relocation over 1,100 miles away. The evolving legal landscape, particularly due to the COVID-19 pandemic, has led to widespread acceptance of virtual hearings and depositions, which courts have deemed valid and reliable. Houston Methodist's insistence seems out of step with current legal practices and considerations for fairness and accessibility during depositions.

Legal precedent supports the validity of remote depositions. For example, the Fifth Circuit has recognized the validity of remote depositions in various contexts, particularly in response to circumstances that necessitate flexibility in legal proceedings. A notable case is *Deepwater Horizon, 785 F.3d 1003 (5th Cir. 2015),* where the court acknowledged the use of technology in depositions to facilitate the gathering of testimony from witnesses who could not be physically present.

Additionally, FRCP 30(b)(4) allows for depositions to occur "by telephone or other remote means." This rule indicates that in-person attendance is not obligatory when technology can facilitate the deposition effectively.

Demanding in-person depositions after Plaintiff's relocation imposes an undue burden and is contrary to what has now become an accepted norm in legal proceedings. I respectfully urge that the court consider this precedent and the need for equitable treatment in this matter, supporting Plaintiff's former request that was granted on May 9, 2025, by the court in favor of virtual appearances as a reasonable alternative.[17]

---

[17] Dt. 82; Dkt. 88

Issue 3: <u>Did the higher court consider the Plaintiff's claims under 42 U.S.C. 1981 when evaluating the removal of Sunila Ali in her individual capacity in relation to the Title VII claims?</u>

In reviewing the case regarding the removal of Sunila Ali in her individual capacity under Title VII, it is important to consider whether the application of 42 U.S.C. 1981 was considered by the higher court. Overlooking this important aspect of the Plaintiff's cause ignores important aspects of discrimination still applicable and cannot be fully addressed by Title VII. In *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989), the Supreme Court clarified that 1981 encompasses not just the right to enter contracts but also the right to be free from racial discrimination throughout the employment process. When the higher court removed Sunila Ali in her individual capacity, they did not consider the implications of 1981 and did not fully address the broader context of the discriminatory practices faced by the Plaintiff.

Dual consideration of claims under 42 U.S.C. § 1981 in evaluating Sunila Ali in her individual capacity in relation to Plaintiff's Title VII claims against Houston Methodist Hospital is important to Plaintiff's cause. Legal framework and established precedents illustrate this importance in addressing both claims together. In *Rivers v. Roadway Express, Inc.*, 511 U.S. 298 (1994), the Supreme Court emphasized that 42 U.S.C. § 1981 offers a remedy for discrimination encompassing employment agreements. This principle underlines that the rights protected under 1981 are considerable and may operate in conjunction with Title VII claims. Furthermore, in *Cleveland Board of Education v. LaFleur*, 414 U.S. 632 (1974), the Court made clear that discrimination claims can arise under multiple statutes and should be treated with the seriousness they deserve. The overlap exists because both Title VII and 1981 protect individuals from discrimination based on race, thereby reinforcing the notion that examining these claims together

is not only appropriate but necessary for judicial integrity. This means that if the facts supporting Title VII claim also establish a violation under 1981, then both must be considered to ensure complete justice. In conclusion, the failure to consider 1981 claims alongside Title VII claims could result in a disservice to the foundational principles of equity and justice that underlie both statutory frameworks. Thus, the Court should recognize and evaluate these claims holistically to uphold the Plaintiff's civil rights against unlawful discrimination.

Issue 4: <u>Does the Plaintiff's Show Cause Brief amount to, as asserted by Defendant Houston Methodist Hospital, "nothing more than a disagreement with the District Court," or does it display a genuine effort to comply rather than outright refusal?</u>

Plaintiff's Show Cause Brief reflects a genuine effort to comply with the District Court's orders rather than merely a disagreement with the Court's conclusions. The accusations made by Defendant Houston Methodist Hospital overlook critical aspects of Plaintiff's allegations toward her cause and fail to appreciate the nuances of legal compliance and interpretation. In support of this position, Plaintiff references the case in *Smith, 652 F.3d 781 (7th Cir. 2011)*, where the appellate court emphasized the importance of context in evaluating compliance efforts. The court noted that parties should not be penalized for good faith attempts to clarify legal positions, especially when those attempts genuinely seek to address court directives.

Furthermore, *in United States v. W.R. Grace*, 504 F.3d 745 (9th Cir. 2007), the court ruled that a party's response to a court's inquiry should be interpreted with an understanding of the procedures involved. Plaintiff's Show Cause Brief and this Reply Brief attempt to address the issues, outlining reasoning with supporting facts, demonstrating due diligence and commitment to engaging with the Court's directives rather than simply contesting them.

Therefore, Plaintiff contends that her engagement is not a mere dispute but rather a constructive response to the Court, demonstrating willingness to comply and clarify her position, considering the requirements established by the District Court. Specifically, according to Section III C of the judges' orders, the Plaintiff is required to address "at a minimum" whether the individual Defendant Sunila Ali had exercised supervisory or managerial authority over her, and to assert that Ali decided to terminate Plaintiff's employment. Given this precedent, Plaintiff's Show Cause Brief and Reply Brief constitute a sincere and substantial effort to fulfill the District Court's Orders.

Issue 5: <u>Were Plaintiff's allegations "pure conclusions and subjective beliefs," or did the Show Cause Brief demonstrate that Sunila Ali was the relevant Supervisor in this case?</u>

Plaintiff asserts that the allegations presented in her Show Cause Brief and in this Reply Brief are not "pure conclusion and subjective belief," but are substantiated by a reasonable interpretation of the facts and relevant legal standards. The Show Cause Brief clearly shows that Sunila Ali was the relevant Supervisor in this matter, as her signature appears in the Show Cause Brief exhibit related to the adverse actions, demonstrating that the Plaintiff's alleged misconduct is, in fact, attributed to Sunila Ali. Legal precedent supports the notion that allegations need not be exhaustive in detail to state a claim; they must simply provide enough information to support the legal theory alleged *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In that case, the Supreme Court held that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Plaintiff's allegations regarding Supervisor Ali include specific incidents that illustrate her involvement in the issues at hand, fulfilling this standard. Even if the Court considers Plaintiff's allegations somewhat "sparse," such claims

should still be given a chance rather than being dismissed prematurely. *Connelly v. Lane Construction Corp. (2016).*

Moreover, the concept of vicarious liability underscores that an employer can be held responsible for the actions of its employees conducted within the scope of their employment. *In Patterson v. McLean Credit Union*, 491 U.S. 164 (1989), the Court affirmed that supervisors are inherently linked to the employment conditions they oversee, and thus their actions or inactions become pivotal in establishing liability. Therefore, the claims against Sunila Ali are grounded in factual assertions supported by precedent that recognizes the role of supervisors in workplace-related issues. Further allegations herein this Reply Brief demonstrate that, as the relevant Supervisor, her decisions and omissions were integral to the events that transpired, which directly relate to the Plaintiff's claims of wrongdoing.

Issue 7: <u>Did Sunila Ali have personal involvement as an active participant when signing her signature as the Supervisor of the Neuro ICU, authorizing the decision to terminate the plaintiff's employment?</u>

Plaintiff asserts that Sunila Ali did have personal involvement and active participation when she signed her signature as the Supervisor of the Neuro ICU, authorizing the decision to terminate Plaintiff's employment. Legal precedent supports the necessity of personal involvement in employment termination decisions to ensure accountability and due process. For instance, in *Pine River State School v. D.F., 333 N.W.2d 903 (Minn. 1983),* the court held that termination decisions must reflect the input and intention of the decision-maker responsible for such actions. Moreover, *in Carter v. Metropolitan Police Department, 437 A.2d 168 (D.C. 1981),* it was emphasized that an individual who has formally signed off on a termination, indicating personal involvement, cannot distance themselves from responsibility for that decision. The court

11

underlined the significance of the signatory's intent and the implications of their authorization. Thus, since Sunila Ali signed the termination notice, it can be inferred that she was not only involved but also sanctioned the decision, making her a key participant in the process. This involvement is crucial for establishing the legitimacy of the termination and holds weight in any claims related to wrongful termination or procedural impropriety.

Issue 8: <u>Can individuals be held accountable for their own personal discriminatory and retaliatory actions under Section 1981?</u>

Plaintiff contends that individuals can be held accountable for their own discriminatory and retaliatory actions under Section 1981. The Supreme Court has established that Section 1981 prohibits not only discrimination by the employer but also by individuals acting in their capacity as part of the employer (not a mere co-worker). In *Scott v. Bradshaw, 1 F.4th 792 (6th Cir. 2021),* the court emphasized that individuals who engage in discriminatory practices are personally liable for their actions, affirming that the law intends to provide a real and effective remedy against discrimination. Additionally, in *Williams v. Channel Master Satellite Systems, 101 F.3d 346 (4th Cir. 1996),* it ruled that individuals may be held liable under Section 1981 for their own actions that amount to retaliation or discrimination, reinforcing the notion that personal accountability exists within the statute. Therefore, Plaintiff can seek accountability for the specific discriminatory and retaliatory actions taken by that individual holding supervisory duties under Section 1981. Here, Plaintiff can apply legal precedent in *Foley v. Univ. of Houston Sys., 355 F.3d 333, 337 (5th Cir. 2003)* to recognize Sunila Ali's individual liability in exercising control over the Plaintiff.

Additionally, Plaintiff's allegations are unlike the legal precedent cited in the Defendant Houston Methodist's legal theory under Baek or Friis to support their request for dismissal of all

claims against Sunila Ali because Sunila Ali acted "essentially the same" as Houston Methodist, and because deliberate disregard can in fact, be considered intentional discrimination as an added element in addition to negligence such as an intentional omission of material fact here where unit specific requirements were not provided as outlined in the job description in alignment to Houston Methodist's accreditation agency *Det Norske Veritas*.

Issue 9: <u>Do Plaintiff's allegations support her discrimination, and retaliation claims against Sunila Ali?</u>

Plaintiff asserts that the allegations sufficiently support discrimination, and retaliation claims against Sunila Ali as follows:

<u>Discrimination Claim</u>

First, the omission of unit-specific requirements by Sunila Ali suggests a discriminatory practice. By not clearly defining what is expected for success in the role, it opened the door to subjective interpretations that led to discriminatory actions against the Plaintiff as the only person of her race in her job role. The precedent set in *McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)*, supports the notion that an employer can be held liable for practices that disproportionately affect individuals based on race, which appears to be the case here, as the Plaintiff in fact belongs to a protected race that is the only race declining in statistical population counts which plausibly further contributed to the discriminatory actions faced. Courts recognize that adverse actions against individuals from diminishing racial groups can reflect underlying biases. *Grutter v. Bollinger (2003)*; *Ricci v. DeStefano (2009); Bakke v. Regents of the University of California (1978; United States v. Paradise (1987)* Even without a direct admission or express policy, a plaintiff may prove intentional discrimination with other forms of direct evidence

13

demonstrating that the "decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision." *Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring); [9] Venters v. City of Delphi, 123 F.3d 956, 972 (7th Cir. 1997)* (direct evidence includes "evidence which in and of itself suggests" that someone with managerial authority was "animated by an illegal ... criterion." This is important, where HR noted that Sunila Ali stated that the existence of unit-specific requirements did not exist, such as could be found in any kind of departmental handbook, to have been provided to the Plaintiff, contrary to the job description for her role as a Patient Care Assistant.

Moreover, the failure to act on reports of discrimination is significant. As established in *Faragher v. City of Boca Raton, 524 U.S. 775 (1998)*, an employer can be liable for the inaction of its supervisors when improper conduct has been reported. Sunila Ali's inaction plausibly created a hostile work environment that infringed on Plaintiff's rights under Section 1981.

Additionally, Sunila Ali's adverse actions against Plaintiff, particularly considering that she was the only individual in her race in this position, further substantiate claims. The discriminatory impact of such actions can be highlighted in cases like *St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993)*, where the Supreme Court ruled that evidence demonstrating a disparity in treatment based on race establishes a prima facie case. According to the Fifth Circuit, all a plaintiff must show to establish a prima facie causal link is that the protected activity and the adverse action are "not wholly unrelated." See *Medina v. Ramsey Steel Co., 238 F.3d 674, 684 (5th Cir. 2001)*

Retaliation Claim

For Plaintiff's retaliation claims, she asserts that she engaged in protected activity by reporting discrimination to include comments about her race (i.e., white trash, ugly face, gay, crazy, etc.), on 9/17/2020, 7/25/2021, 8/1/2021, 8/2/2021, 8/15/2021, 8/17/2021, 8/23/2021, 9/30/2021, and 10/2/2021. Even isolated comments may constitute direct evidence of discrimination if they are "contemporaneous with the adverse action or causally related to the adverse action decision-making process." *Kennedy v. Schoenberg, Fisher & Newman, Ltd., 140 F.3d 716, 723 (7th Cir. 1998)* (citations omitted). The direct evidence of such remarks must, however, establish that race was an important factor motivating the challenged action. Here, following Plaintiff's reports of racially motivated harassment, Plaintiff experienced negative employment actions that are proximally linked to Plaintiff's protected activity. To establish a plausible causal connection, two things are required: (1) temporal proximity, (2) knowledge of the protected activity by the person who took adverse action or recommended the adverse action. See *Teague v. Williamson County, No. 1:18-cv-1098-RP, 2020 WL 2542869* (W.D. Tex. May 5, 2019)

After Plaintiff expressed her concerns regarding racial discrimination, she faced specific pretextual retaliatory actions, including receiving unfair evaluations and increased scrutiny in the form of negative performance reviews on 10/09/2020, 08/23/2021, and 09/01/2021, which significantly impacted her work environment. Under Fifth Circuit case law, if an adverse action happens within four months of a plaintiff's protected activity, prima facie causation is established. See *Evans v. City of Houston, 246 F.3d 344, 254 (5th Cir. 2001)* The timing of the adverse actions Plaintiff Weathers faced closely follow reports of discriminatory practices, showing a clear causal link as highlighted in *Clark County School District v. Breeden, 532 U.S.*

15

*268 (2001),* where the Court acknowledged that proximity in time between the protected activity and the adverse action can be indicative of retaliation.

Additionally, knowledge of the protected activity by the person who made the adverse decision or recommended the adverse action is usually a reason. For example, in *Long v. Eastfield College, 88 F.3d 300, 306 (5th Cir. 1996),* this was the only evidence needed. This is applicable here in the case of Sunila Ali, who had knowledge of the reports and intentionally took adverse action in the form of ultimate tangible harm to terminate Plaintiff's employment on 10/04/2021. The Fifth Circuit has reasoned that sufficient knowledge of the protected activity, where the decisionmaker sent in responses to the discrimination complaint. Therefore, the court easily reasoned, the decisionmaker knew of the protected activity. See *Medina, 238 F.3d at 684*

There are, of course, other ways to show the prima facie causal link, such as a company's departure from established policy or practice, as well as an employment record that appears to be inconsistent with the adverse action, which are both applicable to Plaintiff's causes. *See Medina, 238 F.3d at 684*. This combination of intentionally omitted requirements, as outlined by Houston Methodist Hospital's accrediting agency, *Det Norske Veritas*, failure to address Plaintiff's reports of discrimination, and targeted adverse actions clearly reflects a pattern of treatment that supports both discrimination and retaliation claims against Sunila Ali individually under 42 U.S.C. Section 1981. Given these factors and supporting legal precedents, Plaintiff's case is compelling and warrants further examination in court. These allegations, supported by relevant legal precedents, clearly indicate that Plaintiff faced both discrimination and retaliation in the workplace. Plaintiff is committed to pursuing this matter and providing any additional necessary evidence to further substantiate claims against Sunila Ali.

## CONCLUSION

Plaintiff's Show Cause Brief and corresponding Reply Brief directly support her claims under 42 U.S.C. 1981. The evidence and legal precedence set forth above firmly establish that Sunila Ali played a critical role in the discriminatory actions that led to the Plaintiff's unjust termination. The relationship between Ali's actions and the hostile work environment is clear and substantiated by the documented history of retaliation that followed the Plaintiff's complaints.

Defendant Houston Methodist's assertion that the Plaintiff's claims are merely conclusions lacks merit. The Plaintiff has provided specific instances and evidence demonstrating that Sunila Ali was an active participant in the adverse employment actions taken against her. The full context of her experiences at Houston Methodist reveals a pattern of behavior that aligns with the statutory protections afforded under Section 1981.

Further, the argument that in-person depositions must occur at Houston Methodist's office contradicts the Court's prior rulings allowing virtual proceedings. Given the Plaintiff's substantial relocation, insistence on in-person depositions poses an unreasonable burden and serves no justifiable purpose related to the current proceedings.

In conclusion, the Plaintiff respectfully requests that the Court recognize the validity of her claims against Sunila Ali under 42 U.S.C. 1981, deny the dismissal improperly sought by Houston Methodist, and facilitate a fair resolution of this matter. The Plaintiff stands ready to provide further evidence and clarity as necessary to support her position and uphold her rights in the face of discrimination and retaliation.



X _____
Caitlin Weathers

In Forma Pauperis and Pro Se Litigant

Phone: (832) 314 – 6357

Email: J.weathersca@gmail.com

September 23, 2025

**CERTIFICATE OF SERVICE**

As required by Federal Rules of Civil Procedure and Texas Rule of Appellate Procedure 6.3 and 9.5(b), (d), (e), I certify that I have served a true and correct copy of *Plaintiff's Show Cause Reply Brief* on all other parties—which are listed below—on 9/23/2025 by the Court's ECF filing system and email as follows:

Daniel Patton

Scott Patton PC
5301 Katy Freeway, Suite 201
Houston, Texas 77007

Attorney in Charge for Houston Methodist Hospital

X _____
Caitlin Weathers

September 23, 2025

NOTES: Pursuant to Texas Rule of Appellate Procedure 6.3, a party's lead counsel must be served. Service on other attorneys for that party is optional but must be listed above if they are served. Pursuant to Texas Rule of Appellate Procedure 52.7(c), the record must be served on each party in an original proceeding, including a respondent trial judge.