IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

Caitlin Weathers,

*Plaintiff*,

V.  CIVIL ACTION NO. 4:22-CV-04085

Houston Methodist Hospital, Et. Al.,

*Defendants*.

## **MOTION FOR APPOINTMENT OF PRO BONO COUNSEL**

COMES NOW, the Plaintiff Caitlin Weathers, proceeding *Pro Se* and *in Forma Pauperis,*[1] respectfully submits this *unopposed* motion[2] requesting a referral for appointment of pro bono counsel in the above-referenced employment discrimination lawsuit. The right to counsel is recognized in civil litigation under certain circumstances under 28 U.S.C. 1915(e)(1), especially in cases involving complex legal issues where the plaintiff may be at a disadvantage due to a lack of legal expertise. Although the U.S. Supreme Court has held that the federal *in forma pauperis* statute 28 U.S.C. § 1915 does not authorize federal courts to compel an unwilling attorney to represent an indigent civil litigant. It does, however, allow a court to *request* an attorney's service. *Mallard v. U.S. District Court for the Southern District of Iowa* (1989)

## **BACKGROUND**

---

[1] Dkt. 1, 2 in 4:22-mc-04085, and Dkt. 1 in 4:22-cv-04085
[2] Exhibit A

*"Weathers is a white woman whom the Methodist hired as a Patient Transporter in May 2019. In June 2021, Weathers started a new position as a Patient Care Assistant in Methodist's Neurological Intensive Care Unit under the supervision of Sunila Ali. In August 2021, Weathers texted Ali that her co-workers were harassing her and discriminating against her because of her race. After Ali failed to respond, Weathers e-mailed Mariana Mondragon in Human Resources (HR) about her concerns. Weathers then texted Ali again, informing Ali that she had reached out to HR. HR conducted interviews with Weathers's co-workers about her complaints. Although HR claims they could not substantiate any of Weathers's allegations, they received negative feedback about Weathers's job performance. Accordingly, Ali and Mondragon met with Weathers on August 23, 2021, to discuss Weathers's discrimination and harassment allegations, as well as her poor job performance. At the meeting, Ali and Mondragon placed Weathers on a performance improvement plan (PIP). Ali followed up with Weathers throughout September regarding Weathers's job performance, noting that Weathers did not meet the expectations outlined in the PIP. On September 30, 2021, Weathers reported her co-worker, Sharon Agawy, to Ali regarding ongoing issues of harassment. That same day, Weathers had a confrontation with a nurse. Four days later, on October 4, Methodist fired Weathers. Methodist contends it fired her for poor performance and for failing to meet the expectations outlined in her PIP. Weathers asserts that Methodist and Ali fired her in retaliation for her discrimination and harassment complaints."*[3] It was on 11/09/2022, Plaintiff filed her application to Proceed Informa Pauperis.[4] On 11/16/2022, the Court Granted Plaintiff's Application to Proceed IFP.[5] On 11/16/2022, Plaintiff's complaint was filed against All Defendants.[6] On 12/29/2022, Defendants filed a Motion to Dismiss, and on

---

[3] Dkt. 60, 61, 62
[4] Dkt. 1 in 4:22-mc-04085
[5] Dkt. 2 in 4:22-mc-04085
[6] Dkt. 1 in 4:22-cv-04085

5/22/2023, a Motion for Summary Judgment, and on 10/10/2023, Mag. Judge Christina Bryan granted Defendants' motion for Summary Judgment, dismissing Plaintiff's claims with prejudice.[7] Then, on 9/26/2024, the Fifth Circuit Court of Appeals remanded this case back to this Court for further proceedings, and the Case Reopened on 09/30/2024.[8] Despite Defendants having made legal arguments on the substance of the case between 11/09/2022 and the time of reopening on 09/30/3034, Defendants filed a Motion for More Definite Statement on 12/10/2024, which was granted on 08/13/2024.[9] Within the Court's orders, it was mandated that Plaintiff file a *Show Cause Brief* as to why the Court should not dismiss claims against Sunila Ali.[10] On 10/02/2025, the Court Granted Plaintiff's Show Cause Brief.[11] On 10/16/2025, discovery deadlines were extended and scheduled to be completed by 12/05/2025.[12] As of the date of this motion, no Mediation or Depositions have taken place, and a total of 1,075 days have elapsed since Plaintiff initiated her complaint in the Southern District of Texas, Houston Division, during which prejudgment interest has begun to accrue. Additionally, as the Court was Noticed on 08/19/2025, Plaintiff made a Change of Address over 1,000 miles from where this court case was initiated at 515 Rusk Street, Houston, TX, 77002.[13]

## **LEGAL PRECEDENCE**

The U.S. Court of Appeals for the Fifth Circuit, which includes the Southern District of Texas, has established the standard for appointing counsel in civil cases. The criteria for appointing pro bono counsel, as articulated in *Ulmer v. Chancellor*, 691 F.2d 209 (5th Cir. 1982),

---

[7] Dkt. 7, 31, 50, and 51
[8] Dkt. 60, 61, 62
[9] Dkt. 67, 98
[10] Dkt. 98
[11] Dkt. 109
[12] Dkt. 111
[13] Dkt. 104

explain that "a federal court has discretion to appoint counsel if doing so would advance the proper administration of justice." 28 U.S.C. § 1915(d) (1976) The criteria for appointing pro bono counsel, as articulated in *Ulmer v. Chancellor*, 691 F.2d 209 (5th Cir. 1982), explain that,

*Although "(n)o comprehensive definition of exceptional circumstances is practical," Branch v. Cole, supra, 686 F.2d at 266, a number of factors should be considered in ruling on requests for appointed counsel. These include: (1) the type and complexity of the case, Branch v. Cole, supra, 686 F.2d at 266; Maclin v. Freake, 650 F.2d 885, 888 (7th Cir. 1981); (2) whether the indigent is capable of adequately presenting his case, Branch v. Cole, supra, 686 F.2d at 266; Maclin v. Freake, supra, 650 F.2d at 888; Drone v. Hutto, 565 F.2d 543, 544 (8th Cir. 1977); (3) whether the indigent is in a position to investigate adequately the case, Maclin v. Freake, supra, 650 F.2d at 888; White v. Walsh, 649 F.2d 560, 563 (8th Cir. 1981); Shields v. Jackson, 570 F.2d 284, 285-86 (8th Cir. 1978) (per curiam); Peterson v. Nadler, 452 F.2d 754 (5th Cir. 1971); and (4) whether the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross examination, Maclin v. Freake, supra, 650 F.2d at 888; Manning v. Lockhart, 623 F.2d 536, 540 (8th Cir. 1980).*

*The district court should also consider whether the appointment of counsel would be a service to Ulmer and, perhaps, the court and defendant as well, by sharpening the issues in the case, shaping the examination of witnesses, and thus shortening the trial and assisting in a just determination. See Knighton v. Watkins, 616 F.2d 795, 799 (5th Cir. 1980).*

This applies here as the plaintiff contends that appointing pro bono counsel is essential for effective legal representation in this employment discrimination case. The complexities inherent in the case being, combined with the plaintiff's lack of legal experience, greatly impede

her ability to advocate for her rights. This not only threatens the plaintiff's chances of receiving a fair trial but also risks undermining the integrity of the judicial process.

## ARGUMENT

### I. Type and complexity of the case

The plaintiff's employment discrimination case has undergone significant procedural complexities, including a remand to the district court.[14] With over 110 docket entries,[15] the litigation has involved numerous motions and procedural issues, overwhelming for a self-representing plaintiff. In *Gonzalez v. Lee County Housing Authority, 161 F.3d 1295 (11th Cir. 1998),* the court emphasized the challenges presented by cases with multiple procedural stages. A significant number of docket entries typically indicate ongoing motions and procedural disputes, which can bewilder someone without a legal background. As established in *Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974),* the appellate process can add layers of complexity that require specialized knowledge to manage effectively. In that case, the Fifth Circuit discussed the need for appropriate representation when the litigation has become extensive. Given these challenges, the type and complexity of the current litigation underscore the need for pro bono counsel. Here, the plaintiff must navigate an extensive record with multiple procedural nuances, making effective advocacy exceptionally difficult without the assistance of legal expertise to ensure her rights are adequately represented and fought for in court, and throughout depositions and mediation.

### II. Whether the indigent is capable of adequately presenting his case

---

[14] Dkt. 60, 61, 62
[15] Dkt. 1-111

The judicial system is structured to favor those who understand its intricacies. In *Faretta v. California, 422 U.S. 806 (1975),* the Supreme Court affirmed an individual's right to represent themselves but also acknowledged that it is often "unwise" for a layperson to do so. Specifically, the Court recognized the challenges that self-represented plaintiffs face, reinforcing the need for legal counsel to navigate procedural rules and substantive law effectively. Despite Plaintiff's potential merit in her Show Cause Brief,[16] the Court's finding of confusion necessitates a second amended complaint, suggesting challenges in presenting her case.[17] Here, Plaintiff's potential merit should be considered a reason for appointment, such as in *Karupaiyan V. CVS Health Corporation, et al. Al, No. 1:2019cv08814 – Document 147 (S.D.N.Y. 2024),* where the case did not have to survive a dispositive motion, such as has already occurred in Plaintiff's case.

**III.    Whether the indigent can investigate the case adequately**

Statistical evidence consistently shows that individuals who represent themselves in court tend to have less favorable outcomes than those who have legal representation. This is particularly relevant for the Plaintiff in this case, as illustrated by *Glover v. Johnson, 199 F.3d 421 (6th Cir. 1999)*, where the court highlighted that self-represented plaintiffs often lack the skills needed to effectively pursue their claims, resulting in lower success rates. Here, this is applicable, where Plaintiff was ineffectual in preventing being *dismissed with prejudice* due to both the EEOC and the district court mishandling the case, necessitating an *amicus curiae* brief being submitted on her behalf upon appeal.[18] Further, she continues to encounter substantial challenges in securing legal counsel,[19] which is crucial given the complexities associated with her discrimination case, requiring answers to complex questions. For example, having to meet

---

[16] Dkt. 109
[17] Dkt. 109 at 7
[18] Dkt. 18 in Case No.23-20536 filed on 2/01/2024
[19] Exhibit B

rare and exceptional circumstances upon appeal,[20] and potentially having to answer new federal questions as to the application for reporting on race. The updated federal standards on collecting race and ethnicity data provide new context for interpreting existing civil rights law, such as Title VII of the Civil Rights Act of 1964 and Section 1981. Having to answer novel or complex questions is considered a reason for granting referral to pro bono counsel, such as in *Yang V. Neprash 0:25-cv-00089, (D. Minnesota, Jan. 10, 2025) Dkt. 7*.

IV. **Whether the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross-examination**

In the promotion of justice, the role of pro bono counsel is recognized as vital for ensuring equitable access to legal representation. In *re Gault, 387 U.S. 1 (1967)*, the Supreme Court emphasized that the right to legal representation is fundamental in achieving justice. Pro bono attorneys not only assist individuals who lack resources but also serve to promote broader objectives of social justice and equality. Courts consistently support measures that enhance access to legal services for those who lack them, reinforcing the argument for appointing pro bono counsel in this case. This applies here, where the parties involved have had difficulties reaching agreements on even simple issues.[21]

V. **Whether appointment of Counsel would sharpen the issues, shape examination, and thus shorten the trial and assist in a just determination**

In cases involving multiple defendants, such as an employer under Title VII and a supervisor under Section 1981 here, the potential for conflicting testimonies increases significantly. This complexity necessitates the appointment of pro bono representation to

---

[20] Dkt. 60, 61, 62

[21] Dkt. 108 at 3

navigate the nuances of both statutes effectively. The case of *Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993)*, illustrates the complexities of proving employment discrimination under Title VII, particularly when multiple parties are involved. The Court highlighted the need for evidentiary clarity when assessing claims of hostile work environment, which often arise from varying accounts of workplace interactions. Furthermore, in *Watson v. Fort Worth Bank & Trust, 487 U.S. 977 (1988),* the Supreme Court acknowledged that proving discrimination claims against multiple defendants that involve both Title VII and Section 1981 can lead to divergent legal standards regarding the actions of different parties. The need for effective representation in untangling such conflicts plays a critical role in the litigation process. Additionally, the decision in *Gomez-Perez v. Potter, 553 U.S. 474 (2008),* emphasized the importance of adequately presenting evidence in cases involving overlapping claims under Title VII and Section 1981. The Court noted that the resolution of discrimination claims can hinge on how well a plaintiff can articulate and challenge the conflicting testimonies of multiple defendants, underscoring the necessity of skilled legal counsel in ensuring the presentation of coherent and persuasive evidence.

Moreover, pro bono representation would significantly benefit the Plaintiff by aiding effective communication and negotiation in mediation, dispute resolution, and settlement negotiations, which, at this time, the Defendants have refused to consider despite the court's suggestion for mediation in scheduling orders.[22] Legal professionals possess the expertise necessary to navigate settlement discussions, which a self-representing Plaintiff may lack. Cases like *Miller v. A.C. Kissel, Inc.* and *Harris v. City of New Orleans* demonstrate that unrepresented parties often struggle to understand legal agreements and lack bargaining power. Research

---

[22] Dkt. 102, and Exhibit C

consistently shows that those with legal counsel achieve better outcomes in settlements. In employment discrimination cases, experienced attorneys can recognize nuances in legal rights that enhance their clients' positions. Thus, pro bono counsel is effective in advocating the plaintiff's interests, safeguarding her rights, and ensuring equitable resolutions. Without such representation, the plaintiff risks unfavorable determinations that do not protect her interests and further lengthen the litigation process.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Caitlin Weathers respectfully requests that the Court grant her motion for the appointment of pro bono counsel to assist her in the ongoing litigation. Given the circumstances of this case, the appointment of pro bono counsel would enhance the court's ability to address the complexities at hand and support a fair resolution.

Respectfully submitted,

/s/ Caitlin Weathers

CAITLIN WEATHERS

*Pro Se* and *IFP* Plaintiff

2616 Erwin Rd., #2218

Durham, NC 27705

October 19, 2025

## CERTIFICATE OF SERVICE

I certify that on October 19, 2025, I electronically filed this Motion for Appointment of Pro Bono Counsel in PDF format through the ECF filing system and email. I certify that all counsel of records is registered with CM/ECF, and service will be accomplished via email and the CM/ECF system.

s/Caitlin Weathers

CAITLIN WEATHERS

*Pro Se* and *IFP* Plaintiff

2616 Erwin Rd., #2218

Durham, NC 27705

(832) 314-6357

j.weathersca@gmail.com

# EXHIBIT A

 **Caitlin Weathers <j.weathersca@gmail.com>**

---

### Weathers v. Houston Methodist

**Caitlin Weathers** <j.weathersca@gmail.com>  Mon, Oct 13, 2025 at 6:16 PM
To: Mike Burke <mburke@scottpattonlaw.com>
Cc: Dan Patton <dpatton@scottpattonlaw.com>, Lucas Novick <lnovick@scottpattonlaw.com>

Is Houston Methodist Hospital, Et. Al., opposed or unopposed to Plaintiff's motion to request appointment of pro bono representation?

CWEATHERS

 **Caitlin Weathers <j.weathersca@gmail.com>**

---

### Weathers v. Houston Methodist

**Mike Burke** <mburke@scottpattonlaw.com>  Mon, Oct 13, 2025 at 8:06 PM
To: Caitlin Weathers <j.weathersca@gmail.com>
Cc: Dan Patton <dpatton@scottpattonlaw.com>, Lucas Novick <lnovick@scottpattonlaw.com>

No opposition.

Michael K. Burke
Scott Patton PC
5301 Katy Freeway, Suite 201
Houston, Texas 77007

Direct:  (281) 377-4576
Main:    (281) 377-3311
Fax:     (281) 377-3267
Cell:    (713) 553-7930
Email:   mburke@scottpattonlaw.com

# EXHIBIT B



Caitlin Weathers

**22-0379131 - 0310 Contracts**

**Houston Volunteer**  Thu, Feb 17, 2022 at 3:24 PM
To: Caitlin Weathers
Cc: Natalia Reyes <natalia.reyes@hvlp.org>

Dear Ms. Weathers,

CLOSING LETTER

Thank you for participating in Houston Volunteer Lawyer's (HVL) Virtual Legal Advice Clinic on February 11, 2022. This concludes the services provided to you by our volunteer attorney. Due to limited resources, we are not able to provide all applicants with attorney representation, but we hope you were able to get legal information and advice on your legal matter.

If you wish to file your case in court, you can request for the fees to be waived by filing a Statement of Inability to Afford Payment of Court Costs or an Appeal Bond with your initial documents. You may attach this letter to the form which verifies that Houston Volunteer Lawyers, a legal-aid provider, has determined that you are financially eligible for HVL services. You can find the form here: https://texaslawhelp.org/form/statement-inability-afford-payment-court-costs-orappeal-bond

You may consider contacting the following agencies for further assistance with your legal matter:

Houston Lawyer Referral Service 713-237-9429 www.hlrs.org

TexasLawHelp.org www.TexasLawHelp.org

Lone Star Legal Aid 713-652-0077 www.lonestarlegal.org

You can also find additional information and resources on www.texaslawhelp.org.

Sincerely,

Houston Volunteer Lawyers



Caitlin Weathers <j.weathersca@gmail.com>

## Pro Bono IFP Case 4:22-cv-04085

**Federal Bar Association - Southern District of TX** <fba.southtx@gmail.com>   Thu, Oct 9, 2025 at 7:18 PM
To: Caitlin Weathers <j.weathersca@gmail.com>

Ms. Weathers,

If you are asking for a lawyer, we suggest that you file a motion with the court for the appointment of counsel.  Alternatively, or if the court does not appoint counsel for you, you may want to consult the Houston Bar Association's website, which does have a lawyer referral service and also lists organizations that take on pro bono cases, including Houston Volunteer Lawyers and Lone Star Legal Aid.  The website is https://www.hba.org/?pg=Need-An-Attorney.  I hope this helps.

Best regards,

**Ruth Guerrero**

Executive Director

Federal Bar Association

Southern District of Texas Chapter

P.O. Box 61202

Houston, TX  77208-1202

fba.southtx@gmail.com

# EXHIBIT C

**Mike Burke** mburke@scottpattonlaw.com  Tue, Oct 14, 2025 at 10:23 AM
To: Caitlin Weathers <j.weathersca@gmail.com>

Ms. Weathers,

Mediation and settlement negotiations are purely voluntary. Both sides must agree to participate. To this point Houston Methodist has expressed no desire to us that they wish to participate in either mediation or settlement negotiations despite your overtures. If, for some reason, that changes, we will let you know.



Thank you.

Mike Burke

Michael K. Burke
Scott Patton PC
5301 Katy Freeway, Suite 201
Houston, Texas 77007
Direct:   (281) 377-4576
Main:    (281) 377-3311
Fax:      (281) 377-3267
Cell:      (713) 553-7930
Email:   mburke@scottpattonlaw.com

